725 F.2d 527
 ALEUT CORPORATION, et al., Plaintiffs-Appellees,
and
Arctic Slope Regional Corporation, et al., Defendants-Appellees,
v.
TYONEK NATIVE CORPORATION, et al., Applicants for
Intervention-Appellants,
ALEUT CORPORATION, et al., Plaintiffs-Appellees,
and
Arctic Slope Regional Corporation, et al., Defendants-Appellees,
v.
UKPEAGVIK INUPIAT CORPORATION, Applicant for Intervention-Appellant,
 Nos. 82-3434, 83-3711.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 8, 1983.
Decided Feb. 9, 1984.
 
 Douglas F. Strandberg, Sourant & Strandberg, Anchorage, Alaska, William D. Temko, Munger, Tolles & Rickershauser, Los Angeles, Cal., for plaintiffs-appellees.
 Wallace Rudolph, Tacoma, Wash., for applicants for intervention-appellants.
 Appeal from the United States District Court for the District of Alaska.
 Before SNEED, NELSON, and REINHARDT, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Several village corporations, organized under the Alaska Native Claims Settlement Act (ANCSA), sought on two occasions to intervene as a matter of right in litigation between the ANCSA regional corporations. The district court denied the two motions to intervene. The plaintiffs-intervenors, the village corporations, appeal the denial of the motions to intervene. We affirm.
 
 I.
 FACTS
 
 2
 ANCSA distributed the title to public lands in Alaska to twelve native regional corporations, approximately 175 village corporations, and other entities. The regional corporations were given both the surface and subsurface estates for some land, but were given only the subsurface estate on other land. On the latter parcels, sometimes referred to as "dually owned" property, the village corporations received the surface estates.
 
 
 3
 The regional corporations, however, are required by section 7(i) of ANCSA to share 70% of the revenues received from resources in the subsurface estate with the other regional corporations. 43 U.S.C. Sec. 1606(i). Each regional corporation must then distribute 50% of the revenue received from other regions under the revenue sharing provisions of section 7(i) to the village corporations within its territory. Id. Sec. 1606(j); see Ukpeagvik Inupiat Corp. v. Arctic Slope Regional Corp., 517 F.Supp. 1255, 1261-62 (D.Alaska 1981) (regions must share revenue received from other regions under section 7(i) with villages, but need not share revenue retained from mining that takes place within their boundaries). These inter-region and intra-region revenue sharing provisions are the source of the conflicts that form the basis of this litigation.
 
 
 4
 The litigation in which intervention is sought began as a dispute between the regions concerning the scope of section 7(i). A major issue was whether sand and gravel resources were a part of the subsurface estate on lands owned solely by the regions. If sand and gravel were subsurface resources (i.e., "section 7(i) resources"), revenue from their exploitation had to be distributed among all regions. If they were part of the surface estate, a region mining them in its own territory could keep all of the revenue obtained. This issue was resolved in 1979, when we ruled in Chugach Natives, Inc. v. Doyon, Ltd., 588 F.2d 723 (9th Cir.1979), that sand and gravel are part of the subsurface estate and, therefore, regions mining these resources are subject to inter-region revenue sharing under ANCSA Sec. 7(i).
 
 
 5
 The village corporations, which now seek to intervene in the continuing section 7(i) litigation, object inter alia to the opinion in Chugach. Although the Chugach court was squarely faced only with the issue of whether sand and gravel are subsurface resources for the purposes of the inter-region revenue sharing provisions of 7(i), the Chugach opinion stated that the term "subsurface estate" should be interpreted in the same manner in each of the places it appears in ANCSA. 588 F.2d at 725-26. This language in Chugach disturbed the village corporations. Inasmuch as on dually owned land the village corporations own the surface estate and the regions the subsurface estate, this language in Chugach suggests that the regions, not the village corporations, own the sand and gravel resources on these parcels.
 
 
 6
 Nonetheless, the village corporations did not seek to intervene immediately before or after Chugach. The inter-region litigation continued with respect to other section 7(i) issues, including the extent to which a region could deduct mining expenses prior to distributing mining revenue to the other regions. In 1981, after the district court solved several preliminary issues, the regions agreed to seek a settlement.
 
 
 7
 On the eve of settlement in May of 1982, five villages sought to intervene, claiming that their interests in sand and gravel resources would be impaired if they were not parties to the inter-region litigation. The villages allege that they filed this motion to intervene as soon as possible after hearing about the Chugach opinion and the proposed settlement discussions. On June 29, 1982, the regions reached a settlement. On July 16, 1982, the district court denied the five villages' motion to intervene, finding that the motion was not timely and that the villages had no property interest in sand and gravel resources that would warrant their intervention as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure after Chugach. On October 4, 1982, ten villages, some of which were among the initial five, filed a new motion to intervene, apparently in response to some of the terms in the inter-region settlement agreement. On February 16, 1983, the district court found that this motion to intervene was not timely and denied it. The villages appealed the denials of both motions to intervene.[1] On June 3, 1983, the district court dismissed the inter-region litigation with prejudice on the basis of the settlement agreement.
 
 
 8
 The villages object not only to the possible scope of Chugach, but also to several provisions of the settlement agreement. The villages are particularly concerned about terms of the settlement agreement that control the manner in which the villages' share of revenue from sand and gravel resources is to be computed. As noted above, section 7(i) of ANCSA requires each region to give 50% of the revenue derived from other regions to the villages within its boundaries. Under Chugach, sand and gravel deposits can generate revenue to be so shared. The settlement agreement executed by the regions, however, states that the first $100,000 of gross revenue received by a region for sand and gravel exploitation will be excluded from those revenues required to be shared under section 7(i). This reduces the anticipated revenue of the villages.
 
 
 9
 The concern of the villages is understandable. They fear they will be bound by either the Chugach decision or the settlement agreement.
 
 II.
 ANALYSIS
 
 10
 To intervene as a matter of right, the villages must demonstrate that their applications to intervene were timely and that the requirements of Rule 24(a)(2) of the Federal Rules of Civil Procedure were met. Under this Rule, an applicant has the right to intervene "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Thus, the critical question in evaluating the villages' motion to intervene to protect their interest in sand and gravel resources is whether the disposition of the litigation "may as a practical matter impair or impede [their] ability to protect that interest."
 
 
 11
 The villages point to the Chugach decision and argue that it will prevent them from asserting that sand and gravel resources on dually owned lands are part of the village-owned surface estates. Therefore, they assert the litigation "impaired" their ability to protect that interest. The Chugach decision, however, may not have that effect. Arguably the issue the villages wish to preserve, viz., whether sand and gravel are part of the subsurface estate when the villages own the surface estate, is different from that in Chugach. There the issue was whether sand and gravel are part of the subsurface estate on lands owned exclusively by the regions, for the purposes of the inter-region revenue sharing provisions of section 7(i). Cf. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (collateral estoppel only applies where the same issue has been decided in a previous suit).
 
 
 12
 Of course, the stare decisis effect of the Chugach decision may have an adverse effect on a future attempt by the villages to claim ownership of sand and gravel on dually owned lands. The Chugach dicta that asserts that the term "subsurface estate" should have the same meaning whenever it appears in ANCSA will be particularly troublesome.
 
 
 13
 Nonetheless, the district court did not abuse its discretion when it ruled that the villages' attempts to intervene were not timely. It could properly conclude that intervention on the eve of settlement following several years of litigation was not timely and that to permit it would have prejudiced the rights of the regions impermissibly. See Alaniz v. Tillie Lewis Foods, 572 F.2d 657 (9th Cir.) (per curiam), cert. denied, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). Had the motions to intervene been made a reasonable time after Chugach the situation might have been different.
 
 
 14
 We reach this conclusion on the assumption that the regions did not represent the villages in the section 7(i) litigation. We make no holding with respect to this issue, however. Had the regions represented the villages adequately, intervention as a matter of right would not have been available. Nor under those circumstances would the denial of a motion to intervene not as a matter of right have constituted an abuse of discretion. Our assumption that the villages were not represented by the regions would, were it to be determined to be correct, enable the villages to challenge the applicability of Chugach to dually owned land as well as the settlement agreement to the extent it affected their interests.
 
 
 15
 To be colorable the right of the villages to intervene must rest on the assumption that the regions were not their representatives. Withdraw that assumption and their arguments collapse. But even when supported by the assumption, the trial court did not err in denying the motion on the ground that it was untimely.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Some of the villages have settled with the regions they sought to sue or have otherwise dismissed their appeals