**TYONEK NATIVE CORP.,**
Plaintiff–Appellant,

v.

**COOK INLET REGION, INC.,**
Defendant–Appellee.

No. 86–4073.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1988.

Decided Aug. 3, 1988.

Kris Cassity, Anchorage, Alaska, for plaintiff-appellant.

Mark Rindner, Anchorage, Alaska, for defendant-appellee.

Bruce N. Edwards, Seattle, Wash., for amicus curiae Shee Atika, Inc.

M. Francis Neville, Anchorage, Alaska, for amicus curiae.

Before EUGENE A. WRIGHT and CANBY, Jr., Circuit Judges, and ORRICK,* District Judge.

CANBY, Circuit Judge:

## INTRODUCTION

Plaintiff, Tyonek Native Corporation ("Tyonek"), a village corporation organized under the Alaska Native Claims Settlement Act, ("ANCSA"), 43 U.S.C. §§ 1601 et seq., appeals from an adverse judgment in its action against defendant, Cook Inlet Region, Inc., ("Cook Inlet"), one of twelve regional corporations established under ANCSA.

The Alaska Native Claims Settlement Act was enacted into law "to provide an equitable solution to the claims made by the Natives of Alaska through a combination of land and money." H.R. 92–523, 92nd Cong., 1st Sess., 1971 U.S.Code Cong. & Ad.News 2192, 2193. Under ANCSA, the surface estate in some 22 million acres of land was patented to village corporations such as Tyonek. The subsurface estate in those same lands was patented to regional corporations such as Cook Inlet. 43 U.S.C. §§ 1611, 1613. Lands so divided are referred to as the "dually owned lands." Another 16 million acres, the "fee lands," were patented in their entirety to regional corporations, but those corporations are required to distribute most of the revenues from the subsurface estate among all the regional corporations in Alaska. 43 U.S.C. § 1606(j).

This case arises with regard to land dually owned by Tyonek and Cook Inlet. The issue is whether sand and gravel reserves form part of Tyonek's surface estate or Cook Inlet's subsurface estate.

## DISCUSSION

■ Against a background of recurring dispute between regional corporations and village corporations over the rights to sand and gravel, Tyonek brought this action for a declaratory judgment. Its brief com-

---

* The Honorable William H. Orrick, Senior United States District Judge for the Northern District of California, sitting by designation.

plaint asked the district court for a declaration of Tyonek's "surface rights in dually owned lands including their rights to all uses including movement and placement of sand, stone, gravel, pumicite and cinders." In support of its complaint, Tyonek argued broadly that sand and gravel (which term we take to include stone, pumicite and cinders) is by its nature more appropriately considered part of the surface estate than of the subsurface estate. The district court was of the view that the question was controlled by our decision in *Chugach Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723 (9th Cir.1978), and that sand and gravel were generally a part of the subsurface estate. We agree.

*Chugach,* like this case, presented the question "whether sand and gravel are part of the surface or subsurface estate." *Id.* at 725. It held that such deposits were part of the subsurface estate. The issue arose, however, on fee lands that were wholly owned by a regional corporation. For that reason, Tyonek contends that the question was a totally different one, and that *Chugach* 's decision regarding surface versus subsurface estates on fee lands simply does not address the issue of surface versus subsurface rights on dually owned lands.

*Chugach* cannot be brushed aside that easily, however. Imporant economic rights turned on the distinction between surface and subsurface rights in that case, because revenues from the subsurface estate are broadly shared under ANCSA. 43 U.S.C. § 1606(j). That economic distinction, which was a substantial basis for *Chugach* 's conclusion that sand and gravel belonged to the subsurface, also exists in this case. Moreover, we stated in *Chugach:*

> Technically, the only issue on appeal here is whether the district court erred in holding that sand and gravel are part of the subsurface estate in lands entirely owned by the Regional Corporations. Our decision on this issue, however, necessarily affects the disposition of sand and gravel on dually owned lands, since, as we discuss below, the term "subsurface estate" under ANCSA must have the same meaning regardless of who owns the surface estate. Thus, we exer-

cise our discretion to review the reasoning and holdings of the district court with respect to dually owned, as well as wholly owned, lands.

588 F.2d at 725 n. 7. The district court in this case understandably construed this language to control the issue presented here. It is true, as Tyonek points out, that in *Aleut Corp. v. Tyonek Native Corp.*, 725 F.2d 527 (9th Cir.1984), we characterized the above passage from *Chugach* as dictum, but we also stated that it was likely to have a stare decisis effect adverse to Tyonek. *Id.* at 529–30. That likelihood has now come to pass. *Chugach* and its reasoning control this case.

Our conclusion that *Chugach* governs this case necessarily dispenses with many of the arguments of Tyonek, because they were rejected in *Chugach*. Tyonek's analogies to provisions of ANCSA permitting village corporations to select surface lands *and* sand and gravel rights in National Wildlife Refuges or National Petroleum Reserves were rejected in *Chugach,* 588 F.2d at 729–30, as were its contentions founded on the first Koniag Amendment to ANCSA, *id.* at 730–31. Also rejected were arguments based on the economic and practical hardships to the villages if they did not own the sand and gravel. *Id.* at 731–32. Tyonek elaborates on those arguments more fully here than they were treated in *Chugach,* but any principled application of *Chugach* still requires their rejection.

Tyonek invokes a post-*Chugach* amendment to ANCSA that retains for the villages "revenues from the sale of surface resources harvested or extracted from" village lands conveyed to a municipality. 43 U.S.C. § 1613(c). It argues that resources "extracted" can only be sand and gravel. But the legislative history indicates that Congress was aware of pending disputes over the ownership of gravel, and simply included that reference in case gravel were decided to belong to the surface estate. Alaska National Interest Lands Conservation Act of 1979: Hearings on H.R. 39 Before the House Comm. on Interior and Insular Affairs, 96th Cong., 1st Sess. 1018 (1979) (statement of Morris Thompson, President of Alaska Federation of Natives, Inc.). The same understanding of Con-

gress underlies the second Koniag Amendment, ANILCA § 1427(1), which Tyonek also urges in its support. S.Rep. No. 96–413, 96th Cong., 1st Sett. 325, *reprinted in* [1980] U.S.Code Cong. & Admin.News 5070, 5269. In sum, we find nothing in any of the legislation urged by Tyonek that impugns or undermines the authority of *Chugach* and its application to this case. We also find no comfort for Tyonek in *Watt v. Western Nuclear, Inc.,* 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983), in which the Supreme Court held that gravel was part of the mineral (i.e., subsurface) estate reserved to the United States in lands conveyed pursuant to the Stock–Raising Homestead Act of 1916.

For all these reasons, we affirm the judgment of the district court that general ownership of sand and gravel on dually owned lands lies with the subsurface estateholder.

Incidental Rights

■ Tyonek urges this court, as it did the district court, to declare its incidental ownership rights. By "incidental rights" it apparently refers to uses of sand and gravel incidental to the enjoyment of the surface estate. The district court declined to rule on this claim because, unlike Tyonek's arguments on the broader issue of commercial extraction and sale of sand and gravel, the incidental rights issue had not been extensively or adequately briefed. Tyonek contends that the district court should have addressed this issue and now asks this court to do so.

Except for anecdotal references in the briefs, no facts have been presented which would allow us to rule on a "real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). We have no idea how broad these hypothetical "incidental" uses would be, or the context in which

they would be asserted. The function of declaratory relief is precise resolution and not general admonition. *United States v. Washington,* 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) *cert. denied,* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985). Tyonek has not brought forth a justiciable controversy.[1] The district court did not abuse its discretion in refusing to rule on the claim of incidental rights.

CONCLUSION

*Chugach* controls this case. The district court was therefore correct in concluding that the general ownership of sand and gravel deposits lies with the subsurface estateholder.

The district court did not abuse its discretion in ruling that Tyonek's claim to the right of incidental uses of sand and gravel was not presented with sufficient concreteness to permit a decision. Whether or not the surface estateholder has a right of incidental use, and the extent of any such right, will have to await decision another day.

The judgment of the district court is AFFIRMED.

---

1. Amici have presented examples of hypothetical or actual controversies over allegedly incidental uses, but those issues are not appropriate for decision collaterally in this litigation. Our desire to avoid the drawing of hypothetical lines also causes us to decline the invitation of amicus Eklutna, Inc., to adopt a rule that only sand and gravel deposits locatable under the pre–1955 mining laws belong to the subsurface estate.