960 F.2d 1013
 20 Media L. Rep. 1252
 Antonio BROWN, Plaintiff,
v.
ADVANTAGE ENGINEERING, INC., Defendant-Third-Party Plaintiff-Appellee,
Westlands Water District, Movant-Appellant,
Square Butte Electric Cooperative, et al., Movants,
Amoco Chemical Company, Defendant-Third-Party Defendant-Appellee,
Union Carbide Corporation, et al., Defendants-Third-Party Defendants.
 No. 91-8675.
 United States Court of Appeals,
Eleventh Circuit.
 May 20, 1992.
 
 Robert S. Windholz, Atlanta, Ga., Phillip S. Cronin, Young, Wooldridge, Paulden, Self & Farr, Bakersfield, Cal., and Carolyn Oill, Greines, Martin, Stein & Richland, Wendy D. Brooks and Timothy T. Coates, Beverly Hills, Cal., for appellant.
 Donald M. Fain, Fain, Major, & Wiley, Atlanta, Ga., for Advantage.
 James A. Orr, and Nicholas DeWitt, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for Amoco.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY and EDMONDSON, Circuit Judges, and ATKINS*, Senior District Judge.
 FAY, Circuit Judge:
 
 
 1
 This appeal once again concerns the public's right of access to judicial records in a civil case. The appellant seeks to review pleadings, motions, and evidence openly submitted in district court that were subsequently sealed pursuant to a court monitored settlement. Because we conclude that the district court abused its discretion in sealing court records without a compelling reason, we VACATE the district court's protective order sealing the file in this case and REMAND for proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 2
 On July 30, 1986, Antonio Brown suffered severe injuries from scalding oil resulting from an explosion at the Amoco Torlon Products' ("Torlon") plant in Atlanta, Georgia. Brown recovered workers' compensation benefits for his injuries from Torlon. In 1987, Brown brought a personal injury suit against Amoco Chemical Company ("Amoco Chemical"), Torlon's parent company. At the close of discovery, Amoco Chemical moved for summary judgment on the ground that it was immune from suit under Georgia's workers' compensation law because Amoco Chemical was Torlon's alter-ego at the time Brown was injured.
 
 
 3
 The district court rejected Amoco Chemical's alter-ego defense, holding that there remained material issues of fact with respect to the alter-ego issue.[1] Amoco Chemical subsequently reached a settlement with Brown. One of the key negotiated elements of the settlement agreement was a provision that the record would be sealed. Amoco Chemical apparently agreed to settle the case for an amount exceeding any of its previous settlement offers in exchange for Brown's agreement that the record be sealed. The district court entered an order on July 27, 1990, sealing the record and dismissing the case.
 
 
 4
 On October 13, 1989, in an unrelated action, Westlands Water District ("Westlands") sued Amoco Chemical and Amoco Reinforced Plastics Company ("ARPCO"), in the United States District Court for the Eastern District of California. ARPCO, like Torlon, is a subsidiary of Amoco Chemical. The complaint alleged that ARPCO designed, manufactured, and sold defective pipe to Westlands for use in an underground water system. In its suit, Westlands seeks to show that Amoco Chemical is the alter-ego of ARPCO.
 
 
 5
 After extensive discovery in the California action, Westlands contacted Amoco Chemical directly to obtain copies of Amoco Chemical's summary judgment motion and other related documents from the Georgia action. Westlands agreed to be bound by the blanket protective order of the United States District Court for the Northern District of Georgia if Amoco Chemical would provide the requested documents. Amoco Chemical refused Westlands' request.[2] On December 14, 1990, the district court issued an order permitting the destruction of the sealed documents in the absence of any objection from counsel to preserve the record. (R8:182 at 1). Due to several letters in response from counsel, the record remained intact.
 
 
 6
 On February 7, 1991, Westlands filed a Federal Rule of Civil Procedure 24(b) motion for permissive intervention in the Georgia action for the purpose of unsealing the record. Westlands explained that the requested documents reportedly contained admissions by Amoco Chemical regarding Torlon that could prove helpful in Westlands' action against Amoco Chemical and ARPCO in California. Amoco Chemical principally objected on the grounds that no pending action existed in which Westlands could intervene, and that the motion to intervene was untimely because it was filed more than one year after Amoco Chemical's summary judgment was denied.
 
 
 7
 The district court denied Westlands' motion to intervene under Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir.1977), which set forth four factors for use as guidelines in determining the timeliness of a motion to intervene pursuant to Rule 24(b).[3] Moreover, the district court stated that "[i]f [Westlands] had tried to intervene at the time of the summary judgment order, [Amoco Chemical] could have factored [Westlands'] request into its settlement decision. But because [Westlands] waited until after the court sealed the record, their intervention would deprive [Amoco Chemical] of a crucial benefit of the settlement." (R8:200 at 8).
 
 
 8
 Westlands appeals the district court's denial of its motion to intervene on the ground that the record in the Georgia action should never have been sealed absent a compelling reason, and the district court abused its discretion in finding Westlands' motion to intervene untimely even if the record was properly sealed. Amoco Chemical argues that the district court actively participated in the settlement of the dispute memorializing the condition that the record be sealed, and that the district court properly followed Stallworth regarding a motion to intervene.
 
 II. DISCUSSION
 
 9
 We squarely addressed the central issue presented in this case in Wilson v. American Motors Corp., 759 F.2d 1568 (11th Cir.1985). The facts in Wilson are strikingly similar to the case at hand: a plaintiff who had filed a wrongful death action against a jeep manufacturer in California state court requested that the judicial records in a federal district court action in Georgia be unsealed in order to permit the plaintiff to invoke offensive collateral estoppel against the jeep manufacturer in the California action. Id. at 1569. As here, all pleadings, motions, and evidence were filed with the Clerk of the Court and open to the public. The only distinction of note between Wilson and the instant case is that in Wilson the record was sealed after a jury verdict and here the record was sealed prior to trial, but it is a distinction without a difference.
 
 
 10
 In Wilson, we took great pains "weighing the competing interests of preserving the district court's authority in encouraging settlement agreements and the public's right to access to public trials." Id. We found that "[t]he starting point in such a discussion is the proposition that, absent some exceptional circumstances, trials are public proceedings." Id. After discussing the strong common law presumption in favor of access, we applied the following standard:
 
 
 11
 'We do not hold that every hearing, deposition, conference or even trial in a case of this kind must be open to the public. We do hold that "where, as in the present case, the [court] attempts to deny [ ...] access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to [...] that interest." '
 
 
 12
 Id., at 1571 (quoting Newman v. Graddick, 696 F.2d 796, 802 (11th Cir.1983) (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-07, 102 S.Ct. 2613, 2619-20, 73 L.Ed.2d 248 (1982))) (emphasis added).
 
 
 13
 It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances set forth by the district court in the record consistent with Wilson, the court file must remain accessible to the public.
 
 
 14
 Thus, because it is the rights of the public, an absent third party, that are at stake, any member of the public has standing to view documents in the court file that have not been sealed in strict accordance with Wilson, and to move the court to unseal the court file in the event the record has been improperly sealed. As we find nothing in the record to support the sealing of the court file, we treat the appellant's motion to intervene as a motion to unseal the file.
 
 
 15
 Accordingly, we VACATE the district court's protective order sealing the record and REMAND for proceedings consistent with Wilson and this opinion.
 
 EDMONDSON, Circuit Judge, dissenting:
 
 16
 The strange things about today's court's opinion are how easily it assumes that the public interest in civil litigation generally differs from the interests of the litigants (themselves members of the public) in a particular case, how little significance is given to the fact that this case was settled before trial (unlike Wilson v. American Motors Corp., 759 F.2d 1568 (11th Cir.1985), upon which today's court relies so heavily), and how the considerable jurisprudence on deference in reviewing motions to intervene goes mostly unmentioned.
 
 
 17
 Because the case involves in no way the public nature of trials occurring in open court, this case is materially different from Wilson.[1] This case permits us to look at the law on opening the sealed files of cases that settle before trial to scrutiny by persons not party to the litigation when there is no claim or reason to believe that the files need to be seen to check on either the honesty or the efficiency of the judicial system's handling of the case and when the procedural mechanism used to gain access is a Rule 24(b) motion for permissive intervention filed many months after the case was ended by settlement.
 
 
 18
 For permissive intervention, the standard of review is abuse of discretion. Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977). And intervention after settlement or entry of judgment is not favored. See, e.g., McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1071 (5th Cir.1970) (recognizing well-established principle that intervention after judgment usually not granted); Reeves v. Wilkes, 754 F.2d 965, 971 (11th Cir.1985) (affirming intervention denial in part because time and effort spent to formulate settlement of case would be for naught); cf. also Engra, Inc. v. Gabel, 958 F.2d 643, 645 (5th Cir.1992) (viewing as untimely motion to intervene filed eight months after settlement); Aleut Corp. v. Tyonek Native Corp., 725 F.2d 527, 530 (9th Cir.1984) (finding no abuse of discretion where court denied intervention motion filed on eve of settlement).[2] Timeliness is important when moving to intervene. Given just the delay in filing the motion and the importance of finality in litigation, that is, a case's being over for all purposes at some reasonable, definite time, there is no abuse of discretion here. But, there is more that supports the district court's judgment.
 
 
 19
 For the purpose of civil litigation, courts exist chiefly as a public service to persons who cannot work out their private disputes and need the intervention of an unbiased entity to help bring the controversy to an end. Briefly stated, the public interest in civil litigation is mainly that these private disputes be concluded peacefully, fairly and without too much cost to society as a whole. Voluntary settlements are peaceful, less costly to society than full litigation and, because parties are making their own choice, usually will be as fair to both parties as the results reached following full litigation. Court practices facilitating, as opposed to obstructing, settlements advance generally the public's goals for civil litigation.[3]
 
 
 20
 Allowing private parties in civil litigation in federal court to seal the terms of their settlements and other parts of pretrial records significantly promotes voluntary settlements in some cases. For example, no one disputes that the settlement reached in this case depended on the record being sealed.
 
 
 21
 The linchpin of today's opinion is this idea: "Once a matter is brought before a court for resolution, it is no longer the parties' case but also the public's case." This statement is true in a sense; but it does not seem to help us much in deciding whether the district court abused its discretion in denying a motion to intervene in this case. Nor does it lead directly to the conclusion that pretrial records in civil cases that have been concluded by settlement ought to be easily opened by nonparties to the litigation.
 
 
 22
 It seems plain to me that the public wants civil cases involving private litigants to be concluded fairly, peacefully and without too much cost to the general public. It is nowhere as nearly plain to me that the public wants much or needs much to know about every dispute settled between private parties so long as no one claims that the court, as a public institution, acted wrongfully in the pertinent case. And, in this case, no one even hints at judicial wrongdoing or inefficiency or anything else negative about the court.
 
 
 23
 Let us recall that litigants are not wholly separate from the public. Litigants are part of the public, and I am unwilling to assume too quickly that the public wants something very different from what litigants in a given case want. Defendants rarely have much say about being hauled into court. I doubt that they somehow waive all or most of their privacy privileges simply because someone--justifiably or not--files suit against them. Plaintiffs also often come to court as a last resort, sometimes forced to do so by the arbitrariness of others. They ought not to have to surrender much of their privacy as a condition of making use of the institutions the public provides for the peaceful settlement of disputes. Given the sweep of pretrial discovery, it is easy to understand that much private information about litigants can be dredged up in the pretrial process. All of this information may become part of the court record. I doubt that the public, each of whom may be a litigant tomorrow, believes all that information ought to be fair game once a person becomes a litigant, especially if the pertinent case is settled and never goes to trial.
 
 
 24
 Turning to this case, I see no good reason to allow Westlands to intervene in a case that did not, in fact, involve Westlands in any way and which had been over for seven months before Westlands sought to intervene.[4] The public's right to know is a captivating phrase; but this case is, in reality, about Westlands' convenience. If Westlands were allowed to intervene and then to look at the sealed pretrial records it might be easier for Westlands to prevail in its own civil lawsuit against Amoco. I understand Westlands' desire. I do not think poorly of Westlands' efforts. But Westlands remains free to conduct discovery in its own suit against Amoco. And I do not see Westlands' convenience as a compelling public interest that overrules the privacy expectations of the litigants in this case, the public interest in promoting settlements that would be diminished if Westlands prevailed, the value of finality that would be undercut if this case were reopened for any purpose, and the timeliness rule that intervention after settlement or judgment is unfavored.
 
 
 25
 The issue before us is whether the district court abused its discretion by denying permissive intervention. I cannot say the district court abused its discretion in denying Westlands' motion to intervene. Wilson v. American Motors Corp., 759 F.2d at 1569 ("This appeal raises important issues regarding the public's right of access to civil trials.") is not controlling: no motion to intervene was even involved in Wilson, and no trial is involved here. See also Nixon v. Warner, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (no absolute right of access to judicial records); Belo Broadcasting Corp. v. Clark, 654 F.2d 423 (5th Cir.1981) (less than the most compelling circumstances is enough to prevent access to judicial records not involving trial proceedings); and FDIC v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir.1982) (once confidentiality order is entered and relied upon, it can be modified only if "extraordinary circumstances" or "compelling need" warrants modification).
 
 
 26
 I would affirm the district court's judgment.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 For the district court's opinion denying Amoco Chemical Company's motion for summary judgment, see Brown v. Advantage Engineering, Inc., 732 F.Supp. 1163 (N.D.Ga.1990)
 
 
 [2]
 Had the district court found that Amoco Chemical was the alter-ego of Torlon in the Georgia action, Amoco Chemical would have been immune from suit because of Georgia's workers' compensation exclusivity provisions. However, in the California action, an alter-ego relationship would be detrimental to Amoco Chemical as ARPCO is apparently an unfunded subsidiary in terms of paying judgments, exposing Amoco Chemical as the parent company
 
 
 [3]
 The four factors are: (1) "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene"; (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case"; (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied"; and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." Stallworth v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir.1977)
 
 
 [1]
 A case is authority only for what it actually decides. Wilson dealt with disclosure of trial proceedings and actually distinguished itself from earlier circuit precedent less favorable to easy access to court material on the ground that Wilson was dealing with a trial. See Wilson v. American Motors Corp., 759 F.2d 1568, 1571 (11th Cir.1985). Language such as "What transpires in the courtroom is public property" is stressed throughout Wilson. See, e.g., id. at 1570. The court in Wilson had no authority to decide any case other than Wilson, and the facts of this case are not much like Wilson
 
 
 [2]
 The idea that intervention can occur after settlement or final judgment also raises worrisome jurisdictional questions. See, e.g., Tosco Corp. v. Hodel, 804 F.2d 590, 592 (10th Cir.1986) (concluding that settlement deprived court of jurisdiction to hear nonparties' motion to intervene)
 
 
 [3]
 If fewer cases settled and more cases went to trial, the court system would not be able to handle the additional work without significant changes--probably costly changes--in the court system. This is another public benefit to having cases settle
 
 
 [4]
 Westlands waited for more than three months after it knew about this case's existence before moving to intervene