905 F.2d 1424
 UNITED NUCLEAR CORPORATION, Plaintiff,
v.
CRANFORD INSURANCE COMPANY, now known as American Special
Risk Insurance Company, a Delaware Corporation; Sphere
Insurance Company, Ltd., now known as Sphere Drake
Insurance, PLC, a British Corporation; International
Insurance Company, an Illinois corporation, Defendants-Appellants,
and
Northbrook Excess and Surplus Insurance Company, formerly
known as Northbrook Insurance Company, an Illinois
corporation, Defendant,
Rohm & Haas Company; South Macomb Disposal Authority;
Waste Management, Inc.; Chemical Waste Management, Inc.;
Generators of Waste at the Environmental Conservation and
Chemical Corporation Site, in Zionsville, Indiana,
Intervenors-Appellees.
 No. 89-2205.
 United States Court of Appeals,
Tenth Circuit.
 June 15, 1990.
 
 John A. Klecan of Butt, Thornton & Baehr, Albuquerque, N.M., for defendants-appellants.
 Bruce D. Drucker, Matthew W. Cockrell and Michelle J. Gilbert, also of Rivkin, Radler, Dunne & Bayh, Chicago, Ill., for intervenors-appellees Waste Management, Inc., Chemical Waste Management, Inc. and SCA Services, Inc.
 Donald W. Kiel of Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for intervenor-appellee Rohm & Haas Co.
 Philip B. Davis, Albuquerque, N.M., for intervenors-appellees, with him on the brief).
 Before LOGAN, SEYMOUR and BRORBY, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Defendants Cranford Insurance Company (Cranford), Sphere Insurance Company, and International Insurance Company (International) appeal from an order of the district court which allowed Rohm & Haas Company, South Macomb Disposal Authority, Waste Management, Inc., Chemical Waste Management, Inc., and numerous generators of waste at the Environmental Conservation and Chemical Corporation site in Zionsville, Indiana, (Intervenors) to intervene in this action, and which modified a protective order and an order sealing the record to permit Intervenors access to discovery for use in collateral federal and state litigation with defendants.
 
 
 2
 Plaintiff United Nuclear Corporation (UNC) filed the instant action in 1985, seeking a declaration of liability under environmental impairment liability (EIL) insurance policies issued by defendants. To facilitate discovery, the district court entered a stipulated protective order, pursuant to Fed.R.Civ.P. 26(c), declaring all discovery materials to be confidential and prohibiting their use or disclosure other than for preparation for or use at trial. In 1986, the parties settled; the district court dismissed the suit with prejudice, sealed the record and file "until further order of the Court," I R. tab 136, and ordered that depositions not be disclosed except on order of a court of competent jurisdiction. Pursuant to the settlement agreement, documents produced by defendants were to be retained at UNC's expense for ten years. Defendants-Appellants Brief-in-Chief at 2.
 
 
 3
 Intervenors are all litigants in suits in other state and federal courts seeking determinations that they have coverage under EIL insurance policies issued by defendants Cranford and International. In 1989, they sought to intervene in the instant suit for the sole purpose of seeking modification of the protective order and the order sealing the record to permit them access to discovery produced in this lawsuit for use in their actions against defendants in other courts. The district court granted permissive intervention under Fed.R.Civ.P. 24(b) and modified its prior orders to allow Intervenors access to discovery for use in their collateral litigation. The court placed Intervenors under the same restrictions as the original parties: they could use and disclose the information solely for litigation purposes. Defendants have appealed, and we affirm.
 
 
 4
 * Intervenors challenge our jurisdiction to hear this appeal. Although most orders granting intervention or modification of a protective order are interlocutory and not immediately appealable, intervention here was solely for the purpose of seeking modification of the protective order; the underlying controversy had already been concluded. Therefore, we believe the orders at issue are appealable, either as final orders, see Martindell v. International Tel. & Tel. Corp., 594 F.2d 291, 293-94 (2d Cir.1979), or collateral orders, see Wilk v. American Medical Ass'n, 635 F.2d 1295, 1298 (7th Cir.1980). Therefore, we proceed to the merits.II
 
 
 5
 Defendants initially challenge the district court's grant of permissive intervention under Fed.R.Civ.P. 24(b). Of course, permissive intervention is a matter within the sound discretion of the district court, and we will not disturb its order except upon a "showing of clear abuse." Shump v. Balka, 574 F.2d 1341, 1345 (10th Cir.1978).
 
 
 6
 The courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose. Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 783 (1st Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989). When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits. Meyer Goldberg, Inc. v. Fisher Foods, Inc., 823 F.2d 159, 164 (6th Cir.1987). Here, the district court allowed intervention on a finding that interpretation of the EIL policies was a common issue between the instant case and the other suits. This was a sufficient basis.
 
 
 7
 Defendants argue that intervention three years after a case has settled is precisely the sort of undue delay and prejudice that Rule 24(b) prohibits. While it is true that an application for intervention must be timely, "[t]imeliness is to be determined from all the circumstances," and "the point to which the suit has progressed ... is not solely dispositive." NAACP v. New York, 413 U.S. 345, 365-66, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). The most important circumstance in this case is that intervention was not on the merits, but for the sole purpose of challenging a protective order. Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose. See Public Citizen, 858 F.2d at 786-87; Meyer Goldberg, 823 F.2d at 161-62. We find nothing improper in allowing intervention to challenge a protective order still in effect, regardless of the status of the underlying suit.
 
 III
 
 8
 Defendants also object to the district court's modification of the protective order. As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed. See Public Citizen, 858 F.2d at 781-82; In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir.), cert. denied, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). And modification of a protective order, like its original entry, is left to the discretion of the district court. See Wyeth Laboratories v. United States District Court, 851 F.2d 321, 323 (10th Cir.1988).
 
 
 9
 The protective order in this case was entered by stipulation of the parties and designated all materials produced in discovery as confidential. The order restricted use and disclosure unless a party challenged the confidentiality of a particular item. These stipulated "blanket" protective orders are becoming standard practice in complex cases. See Manual for Complex Litigation, Second, Sec. 21.431 (1985). They allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; see generally In re Alexander Grant & Co. Litig., 820 F.2d 352, 356-57 (11th Cir.1987); Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L.Rev. 1, 9-11 (1983).
 
 
 10
 No doubt such an order makes the discovery process in a particular case operate more efficiently; the assurance of confidentiality may encourage disclosures that otherwise would be resisted. Allowing modification of protective orders for the benefit of collateral litigants tends to undermine the order's potential for more efficient discovery. But when a collateral litigant seeks access to discovery produced under a protective order, there is a counterveiling efficiency consideration--saving time and effort in the collateral case by avoiding duplicative discovery. In striking this balance, some circuits have adopted a presumption in favor of the continued integrity of the protective order, see, e.g., Agent Orange, 821 F.2d at 147-48 (protective orders modifiable only under extraordinary circumstances),[1] others have tipped the balance in favor of avoiding duplicative discovery, see, e.g., Wilk, 635 F.2d at 1299; Olympic Refining Co. v. Carter, 332 F.2d 260, 264-66 (9th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964), and still others have simply left the balancing to the discretion of the trial court, see, e.g., Stavro v. Upjohn Co. (In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.), 664 F.2d 114, 120 (6th Cir.1981). We find ourselves in agreement with the standard laid down by the Seventh Circuit in Wilk:
 
 
 11
 "[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order."
 
 
 12
 635 F.2d at 1299 (citations omitted).
 
 
 13
 Defendants' desire to make it more burdensome for Intervenors to pursue their collateral litigation is not legitimate prejudice. Id. at 1300-01. As the district court recognized, any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing Intervenors under the restrictions on use and disclosure contained in the original protective order. See id. at 1301; Olympic Refining, 332 F.2d at 265-66. The district court, therefore, did not abuse its discretion in modifying the protective order.
 
 
 14
 Having said that, we also should note the limits of the district court's continuing jurisdiction over this matter. The district court was within its power and discretion to modify the protective order, but because the underlying controversy was no longer alive, "the court simply lacked power to impose any new, affirmative requirements on the parties relating to discovery." Public Citizen, 858 F.2d at 781; cf. Smith v. Phillips, 881 F.2d 902, 905 (10th Cir.1989) (district court had no power to order the parties to disclose the terms of settlement agreement resulting in stipulated dismissal, when the settlement was not of record or subject to any court order).
 
 
 15
 In any event, the district court must refrain from issuing discovery orders applicable only to collateral litigation. "[F]ederal civil discovery may not be used merely to subvert limitations on discovery in another proceeding.... [and] a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." Wilk, 635 F.2d at 1300. While the district court here properly granted collateral litigants access to discovery under its protective order, "[q]uestions of the discoverability in the [collateral] litigation of the materials discovered in [this] litigation are, of course, for the [collateral] courts." Superior Oil Co. v. American Petrofina Co., 785 F.2d 130, 130 (5th Cir.1986). Because defendants Cranford and International are parties to the collateral suits, they have both the interest and standing to raise in those courts any relevancy or privilege objections to the production of any materials. See Cipollone v. Liggett Group, Inc., 113 F.R.D. 86, 91 (D.N.J.1986), mandamus denied, 822 F.2d 335 (3d Cir.), cert. denied, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Other courts have assumed that the Second Circuit's "extraordinary circumstances" test applies only when the government is the collateral litigant seeking to avoid duplicative discovery, because of the government's vast investigatorial resources and power for oppression. E.g., Wilk, 635 F.2d at 1299-1300. Indeed, the Second Circuit acknowledged this as the basis for the test in Palmieri v. New York, 779 F.2d 861, 866 (2d Cir.1985). Agent Orange, while purporting to apply an extraordinary circumstances standard, when confronted with a private collateral litigant, upheld modification based only upon the fact that the protective order was a "blanket" one. But, as discussed above, such orders are routine in complex cases