Jeffrey T. JOCHIMS, Plaintiff,

v.

ISUZU MOTORS, LTD., Defendant.

No. 3–89–CV–70109.

United States District Court,
S.D. Iowa,
Davenport Division.

May 24, 1993.

Steven J. Crowley and Darwin Bunger of the Crowley Law Firm, Burlington, IA, for plaintiff.

John McShane and Mary E. Bolkcom of Bowman & Brooke, Minneapolis, MN, for defendant.

## ORDER GRANTING PETITION FOR INTERVENTION AND MODIFICATION OF PROTECTIVE ORDER

BENNETT, United States Magistrate Judge.

This is a products liability case in which Plaintiff Jeffrey T. Jochims alleges he was severely injured when a 1986 Isuzu Trooper II sport utility vehicle he was driving rolled over. On March 2, 1993, Jochims obtained a jury verdict for $1,132,200.00 against Defendant Isuzu Motors, Ltd. ("Isuzu"). That verdict is now subject to pending post-trial motions. This is the latest, and hopefully the final, discovery dispute, among the many between these parties.[1] This latest legal skirmish raises the question of whether counsel for other plaintiffs involved in similar litigation against Isuzu in other jurisdictions may intervene in this litigation, post-trial, to seek modification of the protective order and obtain copies of discovery obtained by Jochims pursuant to a stipulated protective order. Initially, the court must determine whether Petitioners' motion for intervention is timely

---

1. The following published decisions shed some light on the bitterly contested nature of this litigation. *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507 (S.D.Iowa 1992) (Isuzu's discovery requests for certain validation materials from Jochims' liability expert were untimely, in violation of the court's scheduling order, unduly burdensome and would require a continuation of the trial over Jochims' objection); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499 (S.D.Iowa 1992) (Jochims failed to show good cause necessary for modification of stipulated protective order); *Jochims v. Isuzu Motors, Ltd.*, 144 F.R.D. 350 (S.D.Iowa 1992) (Jochims' late designation of expert witnesses resulting in sanctions for Jochims' disregard of the final pretrial scheduling order); and *Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493 (S.D.Iowa 1992) (holding Jochims' claim for $500.00 per hour from Isuzu for the deposition of Jochims' liability witness expert unreasonable).

and whether Petitioners meet the requirements for intervention contained in Federal Rule of Civil Procedure 24(b). If these issues are decided in the affirmative, the court must then consider the two remaining issues presented by Petitioners' motion: first, whether movants have a public right of access to those documents produced by Isuzu during the course of discovery which were subsequently introduced in open court and admitted as exhibits at trial; and second, whether Petitioners may obtain a modification of the protective order entered in this case regarding documents produced by Isuzu.

## I. INTRODUCTION AND BACKGROUND

On January 24, 1991, by stipulation of the parties, then United States Magistrate Judge Longstaff[2] entered a protective order in this case. All discovery in this case then proceeded under the terms of that protective order. On October 8, 1992, Jochims moved to modify the protective order to permit Jochims to share discovery materials with other plaintiffs' counsel. The court denied Plaintiff's Motion for Modification of Protective Order on November 30, 1992. *Jochims v. Isuzu,* 145 F.R.D. 499, 503 (S.D.Iowa 1992). The court found that Jochims had failed to carry his burden of establishing good cause for modification of the stipulated protective order. *Id.* The court left open the question of whether plaintiffs with litigation pending against Isuzu could intervene and request modification of the protective order pursuant to a more relaxed standard. *Id.* at 503–04.

This matter comes before the court on Petitioners' Petition to Permit Intervention of Plaintiffs' Counsel for Modification of Protective Order filed on January 25, 1993. Petitioners are plaintiffs' counsel in other jurisdictions who represent plaintiffs who allege they have been injured while operating or occupying Isuzu Trooper vehicles, and have asserted claims involving the stability, handling, crashworthiness and occupant protection of the Trooper.

On January 27, 1993, the court continued consideration of the motion until the trial was concluded.[3] Isuzu was to respond to the petition within fourteen days of completion of the trial. On March 5, 1993, Isuzu filed its resistance to the petition for intervention. The court then granted Petitioners until April 14, 1993, in which to respond to Isuzu, and set a telephonic hearing for April 20, 1993. The telephonic conference was held on that date, and all Petitioners and parties appeared. The matter is now fully submitted.

## II. ANALYSIS

■ **A. Permissive Intervention.** Federal Rule of Civil Procedure 24(b) provides for permissive intervention.[4] Rule 24 is to be construed liberally with all doubts resolved in favor of permitting intervention. *Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.,* 772 F.2d 401, 404 (8th Cir.1985), *cert. denied sub nom., Ratepayers Fight Back v. Middle South Energy, Inc.,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). "[P]ermissive intervention is a matter within the sound discretion of the district court, and [its order will not be disturbed] except upon a 'showing of clear abuse.'" *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990), *cert. denied sub nom. American Special Risk Ins.*

---

2. Judge Longstaff was appointed a United States District Court Judge on November 5, 1991.

3. This case was tried to a jury before the Hon. Harold D. Vietor from February 16, 1993, to March 2, 1993.

4. Federal Rule of Civil Procedure 24(b) states that:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an appli-

cant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of a claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Co. v. Rohm & Haas Co., 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). It is widely recognized by courts that Rule 24(b) intervention is the "proper method to modify a protective order." *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470 (9th Cir.), *cert. denied sub nom. International Ins. Co. v. Bridgestone/Firestone Inc.,* ─── U.S. ───, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992); *United Nuclear Corp.,* 905 F.2d at 1427; *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 783–84 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Meyer Goldberg, Inc. v. Fisher Foods,* 823 F.2d 159, 162 (6th Cir. 1987); *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 294 (2d Cir.1979); *In re Beef Industry Antitrust Litigation,* 589 F.2d 786, 789 (5th Cir.1979).

■ *(i). Rule 24(b) Requirements.* "Permissive intervention to litigate a claim on the merits under Rule 24(b) requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus.,* 966 F.2d at 473. However when a party does not intend to litigate a claim on the merits, an independent jurisdictional basis is not required. *Id.* As the Ninth Circuit explained in *Beckman,* in such a situation:

> Intervenors do not ask the district court to rule on additional claims or seek to become parties to the action. They ask the court only to exercise that power which it already has, i.e., the power to modify the protective order. For that reason, no independent jurisdictional basis is needed.

*Id.*

Also, "[w]hen a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits." *United Nuclear Corp.,* 905 F.2d at 1427; *Beckman Indus.,* 966 F.2d at 474; *Meyer Goldberg,* 823 F.2d at 164. A requirement that the intervenor's claim involves the same legal theory "is not required when intervenors are not becoming parties to the litigation." *Beckman Indus.,* 966 F.2d at 474.

*(ii). Timeliness.* The fighting issue in regards to the issue of intervention is whether Petitioners' motion for intervention is timely. Initially, it must be noted that post-judgment intervention is not a rare occurrence. *Public Citizen,* 858 F.2d at 785 (seeking to modify protective order); *see Brown v. Advantage Eng'g, Inc.,* 960 F.2d 1013, 1015 (11th Cir. 1992) (challenging the sealing of records); *United Nuclear Corp.,* 905 F.2d at 1426 (seeking modification of a protective order); *Meyer Goldberg, Inc.,* 823 F.2d at 161 (intervening for the purpose of unsealing records); *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1569 (11th Cir.1985) (challenging the sealing of documents); *cf. Olympic Refining Co. v. Carter,* 332 F.2d 260 (9th Cir.) (permitting challenge to order sealing documents; no motion to intervene), *cert. denied,* 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964).

■ On the question of whether a motion for intervention is timely, there is no bright line rule. *Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1230 (1st Cir.1992); *Public Citizen,* 858 F.2d at 784. Timeliness must be determined on a case by case basis, based on the particular facts and circumstances of each. *Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994, 998 (8th Cir.1993); *Greenblatt,* 964 F.2d at 1230. The Supreme Court has recognized that "[t]imeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). "[T]he point to which the suit has progressed ... is not solely dispositive." *Id.* at 365–66, 93 S.Ct. at 2603.

> As the Eighth Circuit Court of Appeals recently pointed out:
>
> In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking the intervention may cause to the other parties if intervention is allowed.

*Mille Lacs Band of Chippewa Indians,* 989 F.2d at 998. Upon consideration of the facts and circumstances of this case, the court concludes that Petitioners' motion is timely.

Petitioners moved fairly promptly to intervene after this court denied Plaintiff's motion to modify the protective order on November 30, 1992.[5] Additionally, since the proposed intervention in this matter is not on the merits but for the purpose of litigating an ancillary issue, the protective order entered in this case, and the merits of the case have already been fully litigated, the parties would suffer little prejudice because of intervention. *See Public Citizen,* 858 F.2d at 786; *United Nuclear Corp.,* 905 F.2d at 1427; *see also Meyer Goldberg, Inc.,* 823 F.2d at 162. Finally, as the First Circuit has aptly noted:

> "[T]he prejudice the parties would suffer from postjudgment access to court documents should not determine the timeliness of the intervention to assert [a] right of access. Instead, assuming an intervenor does assert a legitimate, presumptive right to open the court record of a particular dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order—that is, the court's judgment as to whether, under the circumstances, the balance of equities favoring sealing overrides any presumptive right of access."

*Public Citizen,* 858 F.2d at 787 (quoting *Mokhiber v. Davis,* 537 A.2d 1100, 1105–06 (D.C.1988)). Because Petitioners have met all of the procedural requirements for intervention, the court concludes that Petitioners' motion to intervene will be granted solely for the purpose of litigating the motion currently before the court.

**B. Right of Access.** Petitioners initially assert that they should have access to any of the Isuzu documents which were employed as exhibits during trial, and that the protective order entered in this case is inapplicable to such documents. The public right of access arises under both the common law, and the First Amendment to the United States Constitution.[6] *Wilson,* 759 F.2d at 1569. "The existence of a common law right of access to judicial proceedings and to inspect judicial records is beyond dispute." *Publicker Indust., Inc. v. Cohen,* 733 F.2d 1059, 1066 (3rd Cir.1984). The common law right of access has been reaffirmed in recent years in numerous decisions. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *United States v. Webbe,* 791 F.2d 103, 106 (8th Cir.1986); *see also Brown v. Advantage Eng'g, Inc.,* 960 F.2d 1013, 1015 (11th Cir. 1992); *Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 659 (3rd Cir.1991); *Littlejohn v. BIC Corp.,* 851 F.2d 673, 678 (3rd Cir.1988); *Wilson,* 759 F.2d at 1569; *Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 343 (3d Cir.1986); *Cohen,* 733 F.2d at 1066.

The right of access serves several civic concerns. As the Third Circuit explained in *Littlejohn:*

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court. As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process

---

5. The record does not indicate at when the Petitioners first became aware of this case, nor when the Petitioners filed their suits. Thus, the court cannot determine whether Petitioners could have intervened in this action prior to the filing of the protective order in this case. In any event, delays of as much as three years from the termination of a case have found to be not unreasonable. *United Nuclear Corp.,* 905 F.2d at 1427; *see also Olympic Refining Co.,* 332 F.2d at 265–66 (allowing intervention three years after termination of suit); *Wilson,* 759 F.2d at 1569 (permitting intervention two years after settlement of case to challenge sealing of documents); *FDIC v. Ernst & Ernst,* 677 F.2d 230, 231 (2d Cir.1982) (granting intervention for purpose of seeking modification of stipulation and confidentiality order two years after settlement).

6. Because this issue can be determined under the common law right of access, the court will limit its analysis to that doctrine.

should provide the public with a more complete understanding of the judicial system and a better perception of its fairness. *Littlejohn,* 851 F.2d at 678 (citations omitted). Because of these corollary effects, there is a presumption of access to court records. *See Republic of Philippines,* 949 F.2d at 660; *see also Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312.[7] The right of access, however, is not absolute, and is " 'best left to the discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.' " *Webbe,* 791 F.2d at 106 (quoting *Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312). The burden of proof is on the party which seeks to overcome the presumption of access to demonstrate that "the interest of secrecy outweighs the presumption." *Bank of America Nat'l Trust and Sav. Assoc.,* 800 F.2d at 344.

■ Here, Isuzu has not made a compelling showing for preventing the public from having access to the documents produced by Isuzu which were used in open trial and accepted as exhibits in this case.[8] Two Eleventh Circuit decisions are persuasive on this issue. In *Wilson,* a plaintiff who had brought a wrongful death action against a jeep manufacturer in California state court sought to unseal records in a federal district court case concerning a jeep rollover in order to use the federal court records to establish offensive collateral estoppel in the California state court action. The record in the federal court case been sealed following a jury's return of special interrogatories and the ensuing settlement of the action. *Wilson,* 759 F.2d at 1569. In considering whether access was required, the court applied the following standard:

> We do not hold that every hearing, deposition, conference or even trial in a case of this kind must be open to the public. We do hold that " 'where, as in the present case, the [court] attempts to deny access in

order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to that interest.' "

*Id.* at 1571. A significant factor in the court's analysis was that the case was tried to a jury in open court. *Id.* The Eleventh Circuit, in reversing the district court's sealing of the record, concluded that the general interest in settlements did not outweigh the public's right of access. *Id.*

In *Brown,* 960 F.2d at 1014, after the settlement of a personal injury suit in a United States District Court in Georgia, the record was sealed as a term of the settlement. The fighting issue in the Georgia action was whether a parent corporation was the alter ego of its subsidiary corporation. *Id.* The intervenor, the plaintiff in a federal lawsuit in California, sought to have the records in the Georgia action unsealed. *Id.* At issue in the California litigation was whether the same parent corporation was the alter ego of another subsidiary. *Id.* Following its holding in *Wilson,* the Eleventh Circuit held that the district court erred in not permitting intervention and that the file must remain public absent a showing of "extraordinary circumstances." *Id.* at 1016.

As was the case in *Wilson,* this case was tried to a jury in open court. Unlike the situation in either *Brown* or *Wilson,* the trial record and exhibits in this case have not been sealed. Thus, there is no court order preventing Petitioners from inspecting and copying any such documents. Furthermore, Isuzu has made no showing here to override the presumption of access. The court, therefore, concludes that Petitioners have the right to inspect and copy the trial record and exhibits in this case.

**C. Applicable Standards for Modifying A Protective Order.** It is well established that it is within a court's discretion whether

---

7. In *Webbe,* 791 F.2d at 106, the Eighth Circuit refused to adopt in toto the reasoning behind the Second, Third, Seventh and District of Columbia's recognition of a " 'strong presumption' in favor of access." *Id.*

8. The court notes that paragraph four of the protective order entered on January 24, 1991,

provides that "[a]ny such trial testimony or competitively sensitive data produced as an exhibit at trial shall be sealed and protected from disclosure by this Stipulation and Order." Isuzu, however, had not sought to avail itself of this provision.

to amend or modify a protective order. *See Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 955 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Smith,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *United Nuclear Corp.,* 905 F.2d at 1427; *Wyeth Lab. v. United States District Court,* 851 F.2d 321, 323 (10th Cir.1988); *American Tel. & Tel. Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.1978), *cert. denied sub nom., American Tel. & Tel. Co. v. MCI Communications Corp.,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); *Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F.Supp. 393, 403 (W.D.Va.1987); *In re "Agent Orange" Product Liability Litigation,* 104 F.R.D. 559, 568 (E.D.N.Y.1985).

■ In *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 (7th Cir.1980), the Seventh Circuit set out the following standard to be applied when modification of a protective order is sought by an intervening party:

> "[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion

in judging whether that injury outweighs the benefits of any possible modification of the protective order."

*Id.* at 1299 (citations omitted). The *Wilk* standard has been adopted in the Tenth Circuit.[9] *See United Nuclear Corp.,* 905 F.2d at 1428; *Grundberg v. Upjohn Co.,* 140 F.R.D. 459, 464 (D.Utah 1991). The *Wilk* standard shall be applied in this matter.[10]

Isuzu argues that it relied on the protective order when it produced discovery in this case. Isuzu further argues that if modification of the protective order is granted at this late date it will have "a chilling effect" on the future effectiveness of protective orders facilitating stipulated discovery and instead will lead to an increased number of motions concerning discovery. Although these are valid concerns, these arguments are insufficient.[11] Isuzu's possible prejudice is only half of the balancing process the court must undertake here. The court must weigh Isuzu's prejudice, if any, against the benefits of modification of the protective order. *See Wilk,* 635 F.2d at 1299. Petitioners have pending products liability claims concerning Isuzu's Trooper sport utility vehicle. The benefit from modification of the protective order— against which must be weighed Isuzu's prejudice—is the saving of time and expense which may be achieved by avoiding duplica-

9. The Second Circuit disfavors modification of protective orders and held that protective orders are modifiable only under "extraordinary circumstances." *In re Agent Orange Product Liability Litigation,* 821 F.2d 139, 147–48 (2nd Cir. 1987); *Palmieri,* 779 F.2d at 865; *Martindell,* 594 F.2d at 295. In *United Nuclear,* however, the Tenth Circuit noted that "[o]ther courts have assumed that the Second Circuit's 'extraordinary circumstances' test applies only when the government is the collateral litigant seeking to avoid duplicative discovery, because of the government's vast investigatorial resources and power for oppression. *E.g., Wilk,* 635 F.2d at 1299–1300. Indeed, the Second Circuit acknowledged that as the basis for the test in *Palmieri v. New York,* 779 F.2d 861, 866 (2d Cir.1985)." *United Nuclear Corp.,* 905 F.2d at 1428 n. 1; *see also Kerasotes Michigan Theatres v. National Amusements, Inc.,* 139 F.R.D. 102, 105 n. 2 (E.D.Mich. 1991). The "extraordinary circumstances" requirement seems to be unique to the Second Circuit and has not been followed by the other circuits. The court finds the standard set out in *Wilk* to be more in keeping with the purpose of the Federal Rules of Civil Procedure to "secure

the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Therefore, the *Wilk* standard will be adopted and not the Second Circuit standard.

10. The court does not find the Eighth Circuit's decision in *Iowa Beef Processors, Inc.,* 601 F.2d at 954, to have decided what party has the burden of persuasion on a motion to modify a protective order. That case does not involve modification of a protective order nor does it pose a question concerning intervention. Instead, the question before the Court of Appeals was whether the district court had abused its discretion in lifting a protective order in response to a Congressional subcommittee's issuance of subpoenas duces tecum. *Id.* at 952.

11. Isuzu's arguments may be in part responsive to Petitioners' initial request that the discovery materials be deposited with the Attorneys Information Exchange Group. Petitioners no longer seek this. Petitioners now seek the protected information solely for use in their respective actions against Isuzu.

tive discovery. *See id.; United Nuclear Corp.*, 905 F.2d at 1428; *Kraszewski v. State Farm General Ins. Co.*, 139 F.R.D. 156, 160 (N.D.Cal.1991).

■ The decisions in *Wilk, United Nuclear* and *Kraszewski* are all instructive. In *Wilk*, five chiropractors commenced an anti-trust suit against the American Medical Association and others in Illinois, and discovery was conducted pursuant a protective order. *Wilk*, 635 F.2d at 1296. After "massive" discovery had taken place in the Illinois action, a second anti-trust lawsuit was filed by the State of New York in New York against the same Defendants. *Id.* New York then sought to intervene in the Illinois action for the purpose of modifying the protective order so that it could obtain access to the discovery produced in the Illinois case. *Id.* at 1297. Although noting that the complaints in the two cases were not identical, the Seventh Circuit Court of Appeals reversed the district court's determination and ordered modification of the protective order. Writing for the court, Judge Wisdom noted:

> Federal Rule of Civil Procedure 26(c) permits protective orders to be issued "for good cause shown" to protect litigants from burdensome and oppressive discovery. Yet, "[a]s a general proposition, pretrial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings." This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases *materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we, like, the Multidistrict Panel, are impressed with the wastefulness of requiring the State of New York to duplicate discovery already made.*

*Id.* at 1299 (emphasis added and citations omitted).[12]

A similar decision was reached by the Tenth Circuit in *United Nuclear.* There, the intervenors were insureds with actions pending in other state and federal courts concerning insurance coverage. *United Nuclear Corp.*, 905 F.2d at 1426. The intervenors sought to modify a protective order entered in an action against the same insurers in New Mexico and to use the discovery materials from the New Mexico action in their pending cases. *Id.* In affirming the district court's granting of the modification of the protective order, the court of appeals noted the countervailing interest in avoiding duplicative discovery, and that "Defendant's desire to make it more burdensome for Intervenors to purpose their collateral litigation is not legitimate prejudice." *United Nuclear*, 905 F.2d at 1428.

Finally, in *Kraszewski*, the court permitted modification of a protective order so that class action litigants in an age discrimination action could obtain discovery generated in a prior sex discrimination action against the same defendant. *Kraszewski*, 139 F.R.D. at 160. As Chief Judge Henderson succinctly pointed out: "It simply does not make sense to force class counsel to reinvent the wheel and to promulgate discovery requests and take depositions when much of the same discovery already had taken place in this action." *Id.*

Here, too it makes little sense to require each of Petitioners to trod the footsteps left by Jochims' counsel in the sands of this case's protracted discovery in order merely to obtain duplicative discovery; discovery which more easily and less expensively could be obtained by modification of the protective order in this case. This not only results in substantial savings of time and money to litigants in related cases against Isuzu, but also results in considerable saving of judicial resources. Thus, this court must strike a balance between Isuzu's reliance on the stipulated protective order and the benefits of allowing Intervenors access to the documents subject to the protective order. The court in

---

**12.** The court went on to conclude that "[a] *bona fide* litigant is entitled to his day in court. That the expense of litigation deters many from exer-cising that right is no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another." *Wilk*, 635 F.2d at 1301.

*United Nuclear Corp.,* 905 F.2d at 1427–28 observed regarding this balance:

> No doubt such an order makes the discovery process in a particular case operate more efficiently; the assurance of confidentiality may encourage disclosures that otherwise would be resisted. Allowing modification of protective orders for the benefit of collateral litigants tends to undermine the order's potential for more efficient discovery. But when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery.

Any prejudice to Isuzu is diminished, if not eliminated, by the fact that the information will not be published and is to be used only in other similar litigation involving Isuzu and will be subject to a protective order. *See United Nuclear Corp.,* 905 F.2d at 1428 ("As the district court recognized, any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing Intervenors under the restrictions on use and disclosure contained in the original protective order.")

**D. The Protective Order.** The amended protective order makes several substantive changes in the protective order entered by Judge Longstaff on January 24, 1991. First, the amended protective order enlarges the class of individuals who may gain access to confidential information to include Petitioners and associated individuals who work on Trooper litigation with Petitioners. Second, the amended protective order requires plaintiffs, as that term is defined in the amended protective order, to notify Isuzu as to any disputes plaintiff has concerning the confidential classification placed on a document by Isuzu. The amended protective order further requires counsel to confer with Isuzu's counsel in a good faith effort to resolve such disputes before seeking the court's intervention. Third, the amended protective order

permits plaintiffs to employ the documents in other product liability litigation against Isuzu involving the Isuzu Trooper. Finally, plaintiffs are permitted to retain the documents following completion of their respective litigation.

## III. *CONCLUSION*

Having met the requirements for intervention pursuant to Federal Rule of Civil Procedure 24, Petitioners, lawyers representing other plaintiffs in other jurisdictions in similar products liability litigation against Isuzu, are permitted to intervene in this products liability litigation. Petitioners may intervene for the purpose of obtaining discovery produced in this litigation. In order to serve the twin interests of protecting Isuzu's confidential information and avoiding duplicative discovery, the Intervenors will be subject to a court-imposed protective order that serves, in many important respects, to accommodate those confidentiality concerns expressed in the stipulated protective order entered into between Jochims and Isuzu.

If this court did not modify the protective order to allow Intervenors to obtain the discovery from this litigation, enormous costs would be imposed upon Intervenors' clients and the courts involved in these similar products liability lawsuits. The Jochims litigation was bitterly contested with Isuzu adopting a Stalingrad defense, resisting Jochims at every turn and forcing him to earn his hard-earned victory by contesting his every action and request. This will be the 326th pleading or order filed in this litigation.[13] The enormous and escalating cost of civil litigation, in this case and many others, runs a great risk of placing redress in the federal courts beyond the reach of all but the most affluent. Indeed, had Isuzu's relentless defense not been met by Plaintiff's counsel who was up to the task, both financially and by temperament and persistence, perhaps Jochims could

---

**13.** There were so many discovery disputes in this litigation that during the last year of discovery, the court imposed, at the parties' request, a schedule of monthly hearings to resolve the escalating discovery disputes. Like a snowball rolling downhill, the disputes increased in frequency, size, and acrimony as the trial approached. Isuzu's approach to its pretrial motion practice was similar to its approach to discovery. For example, nine motions in limine were filed shortly before trial.

not have pursued this litigation. As one court stated in another but related context:

Our citizens' access to justice, which is at the core of our constitutional system of government, is under serious siege. Obtaining justice in this modern era costs too much. Courts are among our most treasured institutions. And, if they are to remain strong and viable, they cannot sit idly by in the face of attempts to loot the system.

*Anthony v. Abbott Lab.*, 106 F.R.D. 461, 465 (D.R.I.1985).

Requiring Intervenors to repeat the massive discovery engaged in in this litigation in their own separate lawsuits would be extremely unproductive and wasteful. It would most assuredly cause undue delay. For example, the trial of this case was continued on several occasions due to the ongoing discovery disputes among the parties. "[S]uch delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process...." *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.1990).

Congress recently passed the Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–482. This legislation mandates that each federal district court, after study by an advisory group, implement a plan to reduce the expense and delay in civil litigation in federal courts by providing for just, speedy and inexpensive resolution of civil disputes. 28 U.S.C. § 471. "Congress passed the legislation out of concern over litigation abuse, particularly during discovery, in civil cases; increasing costs and delay in these suits; and shrinking access to federal courts." (citations omitted).[14]

Congress observed that the courts, litigants, the litigants' attorneys and the Congress and the Executive Branch, must share responsibility for cost and delay in civil litigation and for solutions to problems of cost and delay. Cong. Statement of Findings of the Civil Justice Reform Act of 1990, § 102 of Pb.L. No. 101–650. Modification of the protective order in this litigation is a contribution to the solution. "The effective administration of justice depends, in significant part, on the maintenance and enforcement of a reasoned cost/benefit vigil by the judiciary." *Anthony*, 106 F.R.D. at 465.

Therefore, Petitioners' motion is granted and the court will enter the Amended Protective Order which is attached to this order as Appendix A.

**IT IS SO ORDERED.**

APPENDIX A

In the United States District Court for the Southern District of Iowa Davenport Division

Jeffrey T. Jochims,

Plaintiff,

vs.

ISUZU MOTORS, LTD.,

Defendant.

No. 3–89–CV–70109

**AMENDED PROTECTIVE ORDER**

In order to preserve and maintain the confidentiality of certain documents and materials produced by Isuzu Motors, Ltd., (Isuzu) in this lawsuit,

IT IS ORDERED that:

1. Documents to be produced by Isuzu to Jeffrey Jochims during discovery in this litigation which contain confidential technical information or genuine trade secrets shall hereinafter be referred to as protected documents. The term "protected documents" shall likewise apply to any Isuzu documents produced to counsel for the Plaintiff in other Isuzu Trooper litigation. When used in this Order, the word "documents" means all written material, videotapes, and all other tangi-

---

14. Tobias, Carl, *The Clinton Administration and Civil Justice Reform*, 144 F.R.D. 437 (1993). *See also* Senate Comm. on Judiciary, Judicial Improvements Act of 1990, S.Rep. No. 101–416, 101st Cong., 2d Sess. 1–3 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6804–05. *See generally* Jeffrey J. Peck, *"Users United": The Civil Justice Reform Act of 1990*, 54 LAW AND CONTEMP.PROBS. 105 (Summer 1991).

ble items. Except as otherwise indicated below, documents designated by Isuzu as "confidential" that are or have been produced or delivered to Plaintiff or his attorneys, consultants, agents, or experts in this action, shall be protected documents and given confidential treatment as defined below.

2. Any reference to "Plaintiff" shall be deemed to be a reference to the Plaintiff in this action as well as to the petitioners for intervention, Thomas R. Wilson, Esquire; James J. Murphy, Esquire; and R. Ben Hogan, III, Esquire; each of whom are attorneys licensed to practice law and are representing individuals in pending or contemplated litigation against Isuzu Motors, Ltd.

3. The burden of proving that a protected document contains a trade secret or other confidential technical information is on Isuzu. Prior to designating any material as "confidential," Isuzu must make a bona fide determination that the materials are, in fact, a trade secret or other confidential technical information, the dissemination of which has the significant likelihood of damaging Isuzu's competitive position. A document which is otherwise "confidential" will not be treated as such if, on proper motion, the Court determines that such treatment adversely affects the safety of the general public and that the relief from the confidentiality provision is appropriate.

4. If Plaintiff disagrees with the "confidential" designation of any document, Plaintiff will so notify Isuzu in writing by certified mail, and counsel shall also confer personally with Isuzu's counsel in good faith to resolve the disagreement over a document's designation. Within fourteen (14) days from the time Plaintiff has both mailed the written notice and conferred with Isuzu, Plaintiff may apply to this Court to schedule a hearing for the purpose of establishing that the document or documents are truly confidential. Plaintiff will consider any documents so marked as "confidential" until the Court makes a ruling on the status of the disputed materials.

5. Both the protected documents and the information contained therein shall be treated as confidential. Except upon the prior written consent of Isuzu or upon further Order of this Court, protected documents or information contained therein may be shown, disseminated, or disclosed only for the following reasons:

a. All attorneys of record for the Plaintiff in this case including members of their respective law firms, and any other attorney associated to assist in the preparation of the case for trial;

b. All employees of Plaintiff's counsel assisting in the preparation of the case for trial;

c. Experts and consultants retained by the Plaintiff for the preparation of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Isuzu in the automobile industry;

d. The Court, its staff, witnesses, and the jury in this case;

e. Any attorney representing Plaintiff and the respective retained experts involved in other products liability litigation against Isuzu involving allegations of instability in the Isuzu Trooper line of motor vehicles, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Isuzu in the automobile industry;

f. Any court in this country that has jurisdiction over Isuzu so long as the case pending in that court concerns issues involving Isuzu Trooper motor vehicles.

6. Before being given access to any of the protected documents or the information contained in the documents, each person described in Paragraph 5 above shall be advised of the terms of this Order, shall be given a copy of the Order, and shall agree to it in writing, using a standard form to be bound by its terms and to submit to the jurisdiction of this court.

7. Plaintiff's counsel in this case shall not be required to return the protected documents to Isuzu after the conclusion of this case and may retain the documents pursuant to the terms of this Order for use in any Isuzu Trooper litigation. This likewise ap-

plies to any documents already in Plaintiff's possession prior to this lawsuit.

8. To the extent that protected documents or information contained therein is used in the taking of depositions, the documents or information shall remain subject to the provisions of this Order.

9. This Protective Order shall not apply to the disclosure of protected documents or their contents at the time of trial through the receipt of protected documents into evidence or through the testimony of witnesses. The closure of trial proceedings and sealing of the record of a trial involve considerations not presently before the court. These issues may be taken up as a separate matter upon the motion of any of the parties at the time of trial.

10. Affidavits produced by Isuzu for the purpose of in-camera inspection by the Court in support of a response to a Motion to Compel Discovery are found not to constitute a waiver by Isuzu of any claim of attorney-client and/or work privilege as to the underlying documents.

11. All testimony, transcriptions thereof, and evidentiary exhibits identified or introduced into the trial record of this matter are not protected and are not to be considered in any manner as confidential or privileged. Any such transcription, photocopy of documentary exhibit, or reference to any other tangible thing introduced into the record (or photocopy or other reproduction thereof) may be disclosed to Petitioner/Intervenors, Thomas R. Wilson, Esquire; James J. Murphy, Esquire; and R. Ben Hogan, III, Esquire.

12. The entry of this Order (and the submission of any proposed Protective Order by any party) will not preclude the subsequent modification of this Protective Order, upon consideration of any proper future application by the parties or the Petitioners/Intervenors.

13. This Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and attorneys' successors, executors, personal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control.

14. Any individual or person who will submit to the jurisdiction of the Court by signing the form referred to earlier in this Order may have access to the documents for the purpose of copying. The individual or person so submitting him or herself to the jurisdiction of this Court will be responsible for returning the original and copies of the documents to the person providing access to the documents for the purpose of maintaining the confidentiality contemplated by this Order.

**IT IS SO ORDERED.**

**DATED** this 24th day of May, 1993.

/s/  Mark W. Bennett

Mark W. Bennett

United States Magistrate Judge