**Marie Lynette CYPHERS, individually and as Parent and Next Friend of Amanda M. Rohm, minor child, Plaintiffs,**

v.

**FUJI HEAVY INDUSTRIES CO., LTD., a foreign corporation, and Subaru of America, Inc., a New Jersey Corporation, Defendants.**

### No. CV 97–186–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

March 18, 1998.

## OPINION AND ORDER

MOLLOY, District Judge.

Ordinarily a motion *pro hac vice* is granted *pro forma*. Not here. Richard Bowman wants to appear in this case *pro hac vice*. The plaintiff and her lawyers, to put it euphemistically, strenuously resist. The motion *pro hac vice* is denied as it pertains to the law firm of Bowman and Brooke. The individual request of Richard Bowman is dealt with below.

### I. Facts

I have been provided evidence about the litigation "practices" of some lawyers in the Bowman and Brooke law firm. Magistrate Judge Robert Holter testified that the firm did not promote the orderly administration of justice in the case before him, *Livingston v. Isuzu Motors, Ltd.*, 910 F.Supp. 1473 (D.Mont.1995); (TR p. 18, 1. 20–22).[1] In that case Bowman and Brooke defended Isuzu. The court docket there shows over 450 entries. Nearly 40% of the docket entries involved discovery disputes. (Tr p. 10, 1. 5–21).[2] The case involved numerous fought-

---

1. Mr. Bowman strenuously, and correctly, objected to the broad characterization of the "firm's" misconduct in litigation. (Tr. p. 12, 1. 11–15; Tr. p. 18, 1. 23–25) He argued it was not the "firm", it was lawyers in the firm. But, as Judge Holter pointed out, the principal is bound by the agent's acts. (Tr. p. 24) As is discussed in this opinion, many of the problems that arose in Judge Holter's court came about precisely because there were so many lawyers from Bowman and Brooke involved, even though the "firm"

had not been admitted *pro hac vice*. Mr. Bowman was told at the February 27, 1998 hearing if the motion was granted "there's not going to be any other lawyer in your firm that's going to participate in the case except you, if I allow you to." (Tr. p. 19, 1.11–13).

2. I am not unmindful that every "dispute" involves two sides. Not all the motions were filed by Bowman and Brooke in the *Livingston* case.

over discovery issues, sanctions and court intervention. (Tr. p. 10) Multiple lawyers from Bowman and Brooke wrote briefs, argued motions, and participated in abusive discovery. (Tr. p. 9, 1.10–22). The disputes were trivial and were not in compliance with the spirit and letter of discovery. (Tr. p. 11, 1.3–24). The litigation tactics in the *Livingston* case were the worst Judge Holter had seen in a quarter of a century as a state and federal judge. (Tr. p. 12, 1.4–5). The conduct of the lawyers was described as "what is wrong with the law in the United States today." (Tr. p., 18 1. 2–4).

Judge Holter's comments do not stand alone. Lawyer affidavits speak about Bowman and Brooke's "hardball" and "war of attrition" dealings with litigants and opposing counsel. The quest for victory in litigation was described by one judge who likened it to the "march on Moscow". Repeated references are made to misstating facts, testimony and legal authority [3]. The common theme is that the "firm" unreasonably and unnecessarily multiplies and delays proceedings through abusive discovery practices.

In *Jochims v. Isuzu Motors, Ltd.*, 148 F.R.D. 624 (S.D.Iowa 1993) the same defense firm was involved in litigation that generated over thirty orders on discovery and related disputes. The court in *Jochims* found at least one of the motions was "frivolous", "abusive". and an attempt to "harass and wear down their opponents." In *Stengel v. Kawasaki Heavy Industries, Ltd.*, 116 F.R.D. 263 (N.D.Texas 1987) more discovery disputes were sanctioned.[4] In another case the court found the "firm's" discovery conduct "intentionally incomplete and misleading" and characterized the tactics used as discovery fraud. *Delvecchio v. General Motors Corp.*, 255 Ill.App.3d 189, 192 Ill.Dec. 867, 625 N.E.2d 1022 (1993).

■ The record is bad. The pattern is clear. The conduct is unacceptable. I will not allow the firm of Bowman and Brooke [5] to participate in the litigation now before me. That means no work can be done on this case, whether legal research, brief writing, discovery, or court appearances by any member of the firm unless specifically allowed to appear in this case on a properly granted motion *pro hac vice*. But, the real issue is whether Mr. Bowman should be allowed *pro hac vice* status in this case because it was the "firm", not he, who engaged in the inappropriate and unprofessional conduct.

## II. The Legal Standard

■ The Federal District Court controls whom it will recognize as a member of the federal bar. The issue is not a matter within the direct control of any state court. *Abdallah v. Pileggi*, 914 F.Supp. 1115, 1118 (D.N.J. 1996). These rules apply to applicants *pro hac vice* as well as to those seeking full time admission to the federal bar in the district. Admission to practice *pro hac vice* is a privilege and not a right. *Leis v. Flynt*, 439 U.S. 438, 441, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). It is within the inherent powers of the court to admit and discipline attorneys practicing before it. See, *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 160 (3rd Cir. 1984) Cert. Denied, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Likewise, the local Rules of Practice provide that it is in "the discretion of the presiding [judge]" whether to admit a lawyer to practice *pro hac vice*. Local Rule 110–1(f).

## III. Discussion

The wealth of evidence presented causes me to hesitate, and to reflect in considering whether I should grant Mr. Bowman's pending motion. Magistrate Judge Holter pointedly described conduct, in the Montana Federal District Court, by lawyers in the Bowman and Brooke law firm. The conduct involved behaviors that Richard Bowman ac-

---

3. In this very case, defendants filed a motion to dismiss, leaving out a critical phrase in the statute that made the motion specious in a product liability case under Montana Law. For this indiscretion and violation of Rule 11, Fed.R.Civ.P. they were sanctioned. Notably, Mr. Bowman did not write or sign the brief personally.

4. In this case, Mr. Bowman of Bowman and Brooke was sanctioned for "jerking" around another lawyer during discovery.

5. At the hearing Mr. Bowman was told [Court] "I am not going to grant your firm *pro hac vice* to appear here." Mr Bowman: "We do not seek application for the firm, we seek application for three lawyers." (Tr. p. 53, 1.2–5).

knowledged "is mortifying." (Tr p. 37, 1. 20). It is hard to disagree with Judge Holter's testimony that the tactics demonstrated by lawyers from Bowman and Brooke in other litigation represents what is wrong with American law today. (Tr p. 23, 1.13). There is no place in our system of advocacy for one side or the other to try and win a "war of attrition".

### a. *Profession or business*

The evidence before me is a stark reminder of what happens when the practice of law becomes a business and not a profession. Billable hours, or boutique fee agreements that promise "take them to the mat" trials if there is no early settlement,[6] do not justify departure from the civility necessary if advocacy is to continue as the bulwark of civil justice in this nation. There is great institutional risk when lawyers forget that every lawyer must strive at all times to uphold the honor and dignity of the profession. We are all duty bound, lawyers and judges, to improve the administration of justice. Lawyers who engage in trial work have a special responsibility to the court as well as to the litigants. Each must strive for prompt, efficient, ethical, fair and just disposition of litigation.

This does not mean that litigation must take place with a disposition to milk toast proceedings. To the contrary, a lawyer owes undivided allegiance and the utmost application of his or her skill and industry, with the employment of appropriate legal means within the law to enforce *legitimate* interests of the client. But, this duty of loyalty must not be used to distort the duty of advocacy. Every advocate owes the duty of courtesy, candor and the scrupulous effort to find the truth to opposing counsel and to the court. A lawyer is not obliged to accede to a client's demand for discourteous or uncooperative behaviors. Nor is a lawyer licensed to take liberties in discovery by being conveniently unavailable, by multiplying proceedings, by timing the disclosure of information or the names of witnesses. The purpose of what we are all about is to provide a just speedy and inexpensive determination of the merits. Rule 1 Fed.R.Civ.P. That cannot be accomplished unless all the cards are legitimately laid on the table during discovery. The time to deal with objections to evidence is at trial, not in discovery. Most importantly, neither side is obligated at the client's expense to ferret every stone, every nook, and every cranny because of the inescapable lawyer paranoia.

All counsel in this case should keep in mind the seven score wisdom of the Pennsylvania court.

> "It is a popular, but gross, mistake to suppose that a lawyer owes no fidelity to anyone except his client; and that the latter is the keeper of his professional conscience. He is expressly bound by his official oath to behave himself in his office of attorney with all due fidelity to the court as well as the client; and he violates it when he consciously presses for an unjust judgment.... The high and honorable office of a counsel would be degraded to that of a mercenary, were he [or she] compelled to do the biddings of his [or her] client against the dictates of his conscience."

*Rush v. Cavenaugh,* 2 Pa. 187, 2 Barr 187, 189 (Pa.1845).

### b. *Do your own work*

I am left with the firm belief that if the lawyers in this case are compelled to do their own work, to take their own depositions, to write their own briefs, and to pause before every attack, then the system will work as designed. The profession of law is an individual affair, it is an individual professional commitment that is based on personal contact with a client and personalized advice to the client. Turning a case over to a battalion of associates or junior partner "litigators" for processing insulates the trial lawyer from his or her case in a way that was never contemplated when the common law advocacy system was adopted in this country. Our system of advocacy is built upon a model that relates the lawyer and the client intimately. When that professional relationship is altered

---

6. *Cf.* 81–Jun A.B.A.J. 36 (comments of Bowman and Brooke lawyer Hildy Bowbeer reaffirming its client's intention to vigorously defend pending cases despite late disclosure of discovery documents in prior cases that resulted in sanction and settlement even though late disclosure was by another law firm).

for expediency it probably means the lawyer is taking on more work than he or she should. That is the quickest road to poor client relations. It is a one way street to a tarnished reputation.

After hearing oral argument on this motion I personally contacted judges whose names were given to me by Richard Bowman. The judges acknowledged that Mr. Bowman was a zealous advocate and at times flamboyant. But, no judge indicated to me he should be barred as being unprofessional. I did not inquire about the "firm" other than to receive acknowledgment that "too many lawyers" appeared to work on the cases.

■ The yellow flag of caution is before me. Can Mr. Bowman as the captain of the ship avoid responsibility for the conduct of the crew? I think not. Nonetheless, it would be unfair, at this juncture, to tarnish Mr. Bowman by prejudging him in this case. Time will tell if I am right in my judgment. Edmund Burke once said, "I like a clamor whenever there is an abuse. The firebell at midnight disturbs your sleep, but it keeps you from being burned in your bed." I do not intend to be burned in the bed of this case.

### IV. Conclusion

I am going to grant the motion of Richard Bowman to appear *pro hac vice* in this case. I do so based upon his express representation to me that he would do his own work.

THE COURT: Do I have your word, If I allow you and Mr. Struble and Mr. Borkon, that you will do your own work among the three of you and that we're not going to have a battalion of associates dreaming of discovery and motions and all that sort of stuff?

MR. BOWMAN: You have my word. If you allow the three of us, it will be the three of us, period. (Tr. p. 53, 1.6–12).

I will not rule on the motion of Mr. Struble and Mr. Borkon[7] to appear *pro hac vice* until I have a signed pleading from each of them, after reading this order, stating that work on this case will be done only by the three named lawyers, that the legal research will be handled directly by one of them, that the discovery and writing will be done by one of the three, and that what appears to be the "firm" tactics will not be employed in this case. When I receive such a document, together with a proper written motion by each of them to appear *pro hac vice* an order will be entered allowing each to appear for the purposes of this case.

THEREFORE, IT IS ORDERED AS FOLLOWS:

1. The motion of Richard Bowman to appear *pro hac vice* in this case is granted on the express representation that he will do his own work, or if necessary delegate it only to either Mr. Struble or Mr. Borkon.

2. No lawyer from the law firm of Bowman and Brooke is permitted to do any work on this case without my prior and express written approval. A violation of this order will be deemed contempt of court as well as a violation of Richard Bowman's duty as an officer of the court in this case.

3. All lawyers in this case, plaintiff and defendant, shall conduct themselves at all times in a manner consistent with the Cannons of Professional Ethics, the Federal Rules of Civil Procedure, and the Local Rules of this Court.

4. The clerk of court is directed to strike the firm of Bowman and Brooke as counsel of record in this case. The record for all proceedings shall show Richard Bowman as counsel of record. The court reporter is likewise directed to strike the firm name of Bowman and Brooke from all future official transcripts and appearances in this case and to henceforward refer to Richard Bowman as counsel for the defendant.

5. The clerk of court shall not accept for filing in this case any document or pleading on behalf of the defendant Fuji Heavy Industries, Co., Ltd., and Subaru of America, that is not personally signed and attested to by Richard Bowman.

---

7. Mr. Borkon wrote the brief in this case misrepresenting the statute and Montana law on product liability. (Tr. p. 33, 1.17–19). I assume based upon the Rule 11 sanction that I have seen the last of frivolous legal positions in this case.