HARTZ, Circuit Judge.
In these consolidated appeals we address the fate of several depositions taken *1315 in two civil cases in the United States District Court for the District of Colorado. Both cases arose out of the 1999 shootings at Columbine High School. We are asked to determine whether the district court erred in (1) finding that the depositions constitute records subject to the requirements of the Federal Records Act and (2) declining to lift the protective orders covering the depositions to allow an expert in youth violence to review them. We affirm the district court on both issues.
I. BACKGROUND
These appeals follow the settlement of two civil cases brought in the wake of the Columbine school shootings. In the first case, Rohrbough v. Harris, parents of two of the murdered students (the Rohrbough plaintiffs)[1] sued the parents of the two shooters, Eric Harris and Dylan Klebold. In the second case, Taylor v. Solvay Pharmaceuticals, Mark Allen Taylor — a student who was seriously injured in the shootings — sued the drug company that had manufactured a drug allegedly taken by Harris before the shootings. Most of the discovery materials for both Rohr-bough and Taylor were kept in a locked room at the federal courthouse (called the Evidence Room) under the supervision of a special master.
A series of protective orders in each case restricted access to and disclosure of discovery materials. Under the orders, evidence was to be produced by depositing it with the special master. If a deposition required the use of any of the protected documents, it was to be taken in the Evidence Room with the special master present. All the depositions at issue in this case were taken in this manner.
Both cases settled at an early stage. Before they settled, the depositions of Mr. and Mrs. Harris were taken in Taylor, and depositions of the Harrises and Mr. and Mrs. Klebold were taken in Rohrbough. Because Rohrbough settled shortly after the depositions of the Harrises and Kle-bolds were taken in that case, those depositions were never signed. In neither case were the depositions ever used in conjunction with any motion or filed with the district court. After the settlements the magistrate judge entered an order covering both cases — the Evidence Room Order — to govern disposal of the discovery materials. The order stated that many of the materials in the Evidence Room, including the deposition transcripts and court-reporter notes, would be “disposed of’ by the court. Taylor App. at 64, 68. Both the Rohrbough plaintiffs and Taylor objected to the order. The district court consolidated the two cases for consideration of the objections.
The objections opposed destruction of the Evidence Room materials because, among other reasons, they are of historical importance and other litigants might seek access to them. The Harrises, who were granted permission to intervene in Taylor, submitted a response in support of the Evidence Room Order, a position later joined by the Klebolds. The Colorado Attorney General filed a motion to intervene in the cases to object to destruction of the materials; the district court denied this motion but allowed the attorney general to proceed as an amicus curiae. The National Archives and Records Administration (NARA) also participated as an amicus, asserting that the Federal Records Act (FRA) likely prohibited the destruction of some of the materials covered by the Evidence Room Order.
At its hearing on the matter, the district court proposed to transfer the materials in the Evidence Room to NARA, subject to a *1316 25-year sealing order, and requested that the interested parties submit their views on the proposal. In their responses the parties and amici adopted the following positions: Neither the Harrises nor the Klebolds believed the materials to be covered by the FRA; but the Harrises did not oppose the transfer to NARA so long as the confidentiality provisions of the protective order remained in effect, whereas the Klebolds preferred that the materials be destroyed. The Rohrbough plaintiffs opposed the transfer to NARA and sought a return to the “status quo” before the Evidence Room Order. The Colorado Attorney General requested that an expert in youth violence, Dr. Delbert S. Elliott, be permitted to review the depositions. The attorney general attached an affidavit from Dr. Elliott describing the study to be conducted and stating that the depositions could be helpful in assessing the impact of family life on the perpetrators’ social, psychological, and moral development. Taylor supported the attorney general’s request. Taylor did not oppose transferring the records to NARA, but he did object to placing a seal on them for 25 years.
After reading the depositions the district court determined that they were materials subject to the FRA and that they should be transferred to NARA for storage. The court also ordered that the depositions be kept under seal for 20 years. In reaching this conclusion, the court weighed the concerns counseling against disclosure of the depositions — including the risk that release of details about the shootings could trigger copycat incidents, the privacy interests of the parties and of nonparties mentioned in the depositions, and the reliance of the parties on the protective orders — against the public interest in using the materials in the hope of preventing similar tragedies in the future. The court concluded that the balance of interests favored confidentiality and accordingly declined to allow Dr. Elliott access to the records. Taylor and the Rohrbough plaintiffs both appeal the order. Taylor challenges only the denial of Dr. Elliott’s access to the records, and the Rohrbough plaintiffs challenge only the determination that the depositions are subject to the FRA.
II. DISCUSSION
A. Federal Records Act
The Rohrbough plaintiffs consider the depositions that they took to be their property and wish to retain custody of them. Because the depositions were never signed, the special master’s protocol for depositions did not allow counsel to make copies of the depositions, so the transcripts and the court-reporter notes and backup files held in the Evidence Room are the only ones in existence. The Rohrbough plaintiffs argue that the district court erred in ruling that the depositions are “records” under the FRA and that the district court therefore had no authority to transfer them to NARA. The Harrises and Klebolds take no position on whether the depositions are “records” under the FRA but do not oppose their transfer to NARA under seal. The district court’s application of the FRA to the depositions is a mixed question of law and fact, but there are no disputed historical facts, so our review is de novo. See Scanlon White, Inc. v. Comm’r, 472 F.3d 1173, 1175 (10th Cir.2006).
The FRA[2] governs the management, retention, and disposal of federal records. *1317 See 44 U.S.C. chs. 21, 25, 29, 31, 33. NARA has primary authority over the management of federal records under the FRA and is authorized to promulgate regulations regarding records management. See, e.g., id. § 2904(a) (“The Archivist [of the United States, see id. § 2901(15), who administers NARA, see id. § 2102] shall provide guidance and assistance to Federal agencies with respect to ... ensuring proper records disposition”); id. § 2904(c) (the Archivist, together with the Administrator of General Services, shall “have the responsibility — (1) to promulgate standards, procedures, and guidelines with respect to records management .... ”); id. § 2905(a) (“The Archivist shall establish standards for the selective retention of records of continuing value ....”); id. § 3302 (“The Archivist shall promulgate regulations ... establishing ... (1) procedures for the compiling and submitting to him of lists and schedules of records proposed for disposal [and] (2) procedures for the disposal of records authorized for disposal .... ”); Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 62 (D.C.Cir.1983) (“Congress clearly intended to transfer final approval authority over the disposal of records to [NARA]”); see also 44 U.S.C. §§ 2908, 2909; 3303a(d) (additional authority to promulgate regulations). Materials covered by the FRA must be maintained and (if appropriate) disposed of according to a schedule created by the originating agency and approved by NARA. See id. §§ 3303, 3314.
The FRA provides the following definition of the term records:
As used in [chapter 33], “records” includes all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them.
44 U.S.C. § 3301. (This definition also applies in chapters 21, 25, 29 and 31. See id. § 2901(1)). The FRA defines “federal agency” — a term we take to be synonymous with the term “agency of the United States Government” in § 3301 — as “any executive agency or any establishment in the legislative or judicial branch of the Government (except the Supreme Court, the Senate, the House of Representatives, and the Architect of the Capitol and any activities under the direction of the Architect of the Capitol).” Id. § 2901(14). District courts are therefore “agencies” under the FRA.
To simplify, the depositions in this case qualify as records if they were (1) made or received by the court, and (2) preserved by the court or appropriate for preservation because they are evidence of government performance or because they contain other information of value. The Rohrbough plaintiffs do not dispute that the second requirement is met. As for the first requirement, the depositions were clearly not “made” by the court. That leaves the question whether the depositions were “received” by the court within the meaning of the statute.
*1318 There are no court decisions on this point, but NARA has promulgated a regulation defining what it means for material to be “received”:
Received means the acceptance or collection of documentary materials by agency personnel in the course of their official duties regardless of their origin (for example, other units of their agency, private citizens, public officials, other agencies, contractors, Government grantees) and regardless of how transmitted (in person or by messenger, mail, electronic means, or by any other method).
36 C.F.R. § 1222.12(b)(4) (emphasis added). The Rohrbough plaintiffs do not challenge the NARA regulation’s interpretation of the FRA. Rather, they contend that no “agency personnel” ever accepted or collected the deposition transcripts.
The term “agency personnel” is undefined in the regulations. Undoubtedly, employees of the clerk’s office would be “agency personnel” of a district court. Thus, documents filed with the clerk’s office would be documents “[r]eeeived ... by agency personnel.” Depositions, however, are not automatically filed with the court. Rule 5(d)(1) of the Federal Rules of Civil Procedure provides that depositions “must not be filed until they are used in the proceeding or the court orders filing.” As the district court stated, the depositions at issue in this appeal were never “admitted as evidence nor cited, under seal or otherwise, in any proceeding or pleading in either case.” Taylor App. at 289. Consequently, they were never filed with the clerk of court, who thus never “received” them.
Likewise, we think it clear that district court “agency personnel” includes the judges of the court. If a judge makes a decision based on materials presented to him or her, even if the materials are not formally filed, they could be said to be “accepted” by agency personnel. In this case, however, it is undisputed that the judge never considered any of the depositions in rendering any decision before the dispute regarding disposal of the depositions.
Nevertheless, the depositions were required to be deposited with the special master, and he maintained custody over them (he was the only person with a key to the Evidence Room, and his presence was required for any inspection of materials produced under the protective order). The question then is whether the special master should be considered court personnel. We hold that he should. A special master occupies a special place in court proceedings, as indicated by Federal Rule of Civil Procedure 53, which governs in some detail the appointment and authority of special masters. The special master is more than an advisor or facilitator for the court. In the cases below, for example, he was granted all the powers provided by Rule 53. In particular, empowered to “address pretrial ... matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district,” Fed.R.Civ.P. 53(a)(1)(C), he was directed to rule on all discovery disputes in both cases. He was present when the depositions were taken, and he made contemporaneous rulings on objections. His presence at depositions made it unnecessary for the parties to raise objections concerning the depositions with the magistrate judge or the district court, which would normally require submitting partial transcripts, rendering them “received” by the court. Indeed, in resolving disputes between the parties, he performed judicial functions. See Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (a quintessential characteristic of *1319 judging is the “performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.” (internal quotation marks omitted)). In short, the special master was so intimately an arm of the court that he should be considered “agency personnel” for the purposes of the FRA. Because the depositions were deposited with him, they were “received” by the district court and are therefore records covered by the FRA.
The dissent raises several arguments not presented by the Rohrbough plaintiffs on appeal. The arguments are interesting ones but they do not persuade us to reverse.
First, the dissent faults us for relying on the definition of records in 44 U.S.C. § 3301 even though the record-preservation duty imposed on federal agencies by 44 U.S.C. § 3101 does not encompass everything defined as a record in § 3301. In particular, it points out that § 3101 requires agencies to “make and preserve” records “containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency’s activities.” Absent from § 3101 is any mention of those documentary materials that are records under § 3301 only “because of the informational value of data in them.” In other words, there is no record-preservation duty under § 3101 with respect to those documentary materials that are defined as records only because of their informational value.
This argument might be compelling if § 3101 were intended to establish the sole record-preservation duties of federal agencies. But that is not the intent of the section. Its clear purpose is to ensure that agencies make adequate records documenting its operations. It also mandates, quite naturally, that the agencies then retain those records (else making them would be of little consequence). It does not say, however, that if an agency makes other records or receives records that do not document agency operations, then the agency is free to dispose of them as it will. Nor can we read § 3101 to imply such a limit on an agency’s preservation responsibilities. That implication would contradict the express language of 44 U.S.C. § 3314, which states that “[t]he procedures described by [chapter 33, which does not include § 3101] are exclusive, and records of the United States Government may not be alienated or destroyed except under [chapter 33].” When chapter 33, entitled “Disposal of Records,” imposes duties with respect to records, it undoubtedly refers to all records defined by § 3301 of that chapter, not just the subset described in § 3101.
Moreover, we would be inclined to say that the depositions in this case come within the category of records described by § 3101. If the special master had been merely a custodian or guardian of the depositions, we might agree that they do not. But all the depositions were taken in his presence and he ruled on objections as they arose. If the depositions had been taken before a judge, there would be little doubt that they would document the “decisions, procedures, and essential transactions of the [court].” § 3101. When this role is delegated to special masters, who, as the dissent agrees, are “agency personnel,” the same conclusion would seem to follow.
The dissent’s second issue is that our opinion “interprets the FRA as throwing a wrench into discovery practice.” Op. (Lucero, J. dissenting) at 1328. It argues: “Today’s decision potentially exposes any *1320 discovery deposited with a special master to public inspection. I cannot read a vague, broadly-worded statute directed toward public agencies as having such a profound effect.” Id. at 1328-29. But as the dissent apparently concedes, id. at 1330, filed depositions are “records” subject to the records disposition schedule for the judiciary, see Guide to Judiciary Policies and Procedures, Vol. 13, ch. 17: Records Disposition Program and Records Disposition Schedules (2003) (“Judiciary Records Schedule”). And before 1980, which was well after the FRA took its present form, all depositions had to be filed. See, e.g., Fed.R.Civ.P. 30(f) (1970) (“[The officer before whom the deposition was taken] shall then securely seal the deposition in an envelope indorsed with the title of the action ... and shall promptly file it with the court....”); Fed.R.Civ.P. 30 advisory committee’s note to 1980 amendment of Rule 30(f)(1); Fed.R.Civ.P. 5 advisory committee’s note to 1980 amendment of Rule 5(d). Given that every deposition in a federal suit was a record subject to the FRA before 1980, it should not be cause for great concern about the impact on discovery if some depositions still are. We also note that even for depositions taken after 1980, even when they are governed by a protective order, they certainly become records under the FRA when they are used at a trial or in a filed pleading; so no party can be totally confident that a deposition will not ultimately become such a record.
Finally, the dissent suggests that NARA and the Judicial Conference of the United States have indicated that depositions not filed or used by a judge are not governed by the FRA. We disagree. NARA’s district-court brief did say that a deposition quoted or cited in a motion would be a record under the FRA; but it made clear that this was only one potential ground for its being a record. NARA expressed no opinion on whether special masters can be court personnel or on the consequences that might follow from that categorization. And it is hardly clear that the Judicial Conference retention schedule does not encompass the depositions in this case. That schedule includes “records resulting from the docketing and processing of a case in a court that pertains to that particular case.” Judiciary Records Schedule § 15(a). This phrase could be interpreted to include an unfiled deposition that is otherwise a record. In any event, it would not be at all surprising if some unusual circumstances, such as those in this case, had been overlooked when the schedule was prepared. The regulations promulgated by NARA contemplate that records will be scheduled in stages. See 36 C.F.R. § 1228.22 (“Ultimately, all records of an agency must be scheduled, but they need not all be scheduled at the same time. An agency may schedule the records of one function, program or organizational element at a time.”). If a category of records is overlooked in an agency’s schedule, that category need not be deformed to fit into an established category. The regulations recognize the possibility that a record that is appropriate for preservation may not be addressed in existing agency manuals. See id. § 1222 — 12(b)(6) (“Appropriate for preservation means documentary materials made or received which in the judgment of the agency should be filed, stored, or otherwise systematically maintained by an agency because of the evidence of agency activities or information they contain, even though the materials may not be covered by its current filing or maintenance procedures.” (emphasis added)). In such a circumstance, determination of whether a document is a “record” under the FRA must be based on the language of the governing statute and regulations, *1321 without assistance from the agency’s schedules.
B. Modification of Protective Order
Although the district court ordered that physical custody of the depositions be transferred to NARA, it continued to restrict access to them under its prior protective orders for 20 years. NARA informed the district court that its practice is to allow the originating agency to determine access to the records while the agency retains legal (but not physical) custody of the records, which the court stated that it would do for 20 years. Taylor appeals the court’s decision not to modify the protective orders that applied to the depositions. He contends that the court erred in finding that the interests favoring continued confidentiality outweighed the public’s interest in the requested access to the depositions.
The modification of a protective order, like its original entry, is left to the sound discretion of the district court. See United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir.1990). Under Federal Rule of Civil Procedure 26(c), for “good cause” a court may issue a protective order regarding discovery “to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.” Such an order may forbid the disclosure of discovery, see Fed.R.Civ.P. 26(c)(1)(A), and require that depositions be sealed and opened only upon court order, see id. Rule 26(c)(1)(F). The “good cause” standard of Rule 26(c) is “highly flexible, having been designed to accommodate all relevant interests as they arise.” United States v. Microsoft Corp., 165 F.3d 952, 959 (D.C.Cir.1999).
We are unable to review the district court’s exercise of discretion, however, because the appellants have not provided us with the deposition transcripts that the court reviewed and relied on. Without these materials, we cannot properly evaluate certain factors, such as the presence of information that might encourage copycat incidents, whether the divulgence of the contents of the depositions would subject the Harrises and Klebolds to embarrassment or oppression, the extent to which the deposition testimony might have been given in reliance on the protective orders, or even the potential research interest of the testimony. “A party who seeks to reverse the decision of a district court must provide an adequate record for this court to determine that error was committed.” Travelers Indem. Co. v. Accurate Autobody, Inc., 340 F.3d 1118, 1119 (10th Cir.2003); see also 10th Cir. R. 10.3(A)-(B) (“Counsel must designate a record on appeal that is sufficient for considering and deciding the appellate issues,” and “[t]he court need not remedy any failure by counsel to designate an adequate record.”). We recognize that the record on appeal consists of “(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk,” Fed. R.App. P. 10, and that the depositions were never filed below. Nevertheless, knowing that the district court had considered the contents of the depositions in deciding whether to modify the protective order, Taylor should have moved the district court to include the sealed depositions in the court record, so that we could properly review the court’s decision.[3] Id. at 10(e); see also *1322 United States v. Andiarena, 823 F.2d 673, 677 (1st Cir.1987) (granting motion to supplement record to include evidence considered by jury); see generally Gregory A. Castanias & Robert H. Klonoff, Federal Appellate Practice and Procedure in a Nutshell §§ 3.4 (Extra-Record Facts), 9.1 (Composition and Supplementation of the Record on Appeal) (2008). Without those materials, we are obliged to affirm.
III. CONCLUSION
The judgment of the district court is AFFIRMED.

. There were also other plaintiffs but they are not parties to this appeal.

. As the D.C. Circuit noted in Armstrong v. Bush, 924 F.2d 282, 284 n. 1 (D.C.Cir.1991), “The FRA is actually a series of statutes, which originated with the Federal Records Act of 1950, ch. 849, 64 Stat. 583, and the 1943 Disposal of Records Act, ch. 192, 57 *1317 Stat. 380.” We will refer to the original acts and the amendments collectively as the FRA, as does NARA.

. We note that Taylor, who is not a party to the Rohrbough case, has not moved to intervene in that case. The appropriate method for a third party to challenge a protective order is to intervene in the case. See United Nuclear Corp., 905 F.2d at 1427. But in light of the inadequacy of the record, we need not *1322 decide whether this procedural flaw would be fatal to Taylor’s appeal.