**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 28, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

TIMOTHY I. SIEGEL,

    Plaintiff - Appellant,

and

COMPSOURCE MUTUAL INSURANCE
COMPANY,

     Intervenor,

v.

BLUE GIANT EQUIPMENT
CORPORATION,

    Defendant – Appellee.

Nos. 18-5113 & 19-5007
(D.C. No. 4:15-CV-00143-TCK-JFJ)
(N.D. Okla.)

TIMOTHY I. SIEGEL,

    Plaintiff,

and

COMPSOURCE MUTUAL INSURANCE
COMPANY,

     Intervenor-Appellant,

v.

BLUE GIANT EQUIPMENT
CORPORATION,

    Defendant – Appellee.

No. 19-5008
(D.C. No. 4:15-CV-00143-TCK-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.
_____

Timothy Siegel was employed by Omni Lighting (Omni) to do stagehand work at a theater called "The Joint," which is part of the Hard Rock Hotel & Casino complex in Catoosa, Oklahoma. Mr. Siegel was injured in a workplace accident while using a stationary dock scissor lift. He sued Blue Giant Equipment Corporation (Blue Giant), the manufacturer of the lift, asserting a product liability claim.[1] Blue Giant moved to exclude Mr. Siegel's expert and for summary judgment. The district court granted the motions and entered judgment in favor of Blue Giant.[2]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] After Mr. Siegel filed his complaint, Compsource Mutual Insurance Company (Compsource), Omni's workers' compensation carrier, filed a complaint in intervention. Compsource asserted it had a subrogation interest in the action because Mr. Siegel had elected to receive workers' compensation benefits.

[2] Mr. Siegel filed a notice of appeal from the district court's judgment, which was assigned case number 18-5113. A few months later, the district court entered another judgment in favor of Blue Giant and against Compsource because "Compsource's claim is derivative of [Mr. Siegel's] product liability claim." Aplt. App., Vol. III at 199. Mr. Siegel and Compsource's appeals from the second judgment were assigned case numbers 19-5007 and 19-5008, respectively.

Mr. Siegel[3] challenges the district court's orders granting Blue Giant's motions (1) to strike Mr. Siegel's expert witness; (2) for summary judgment; and (3) for a protective order. We affirm.

## I. Background

In 2008, the Cherokee Nation of Oklahoma decided to expand its hotel and casino complex to include The Joint theater. Thalden Boyd Architects prepared the plans and specifications for the theater. Companies were asked to bid on providing the loading dock equipment for the theater based on Thalden Boyd's specification for dock lift equipment. The specification mandated the dock lift comply with ANSI MH29.1, which is the published standard regarding safety requirements for industrial scissor lifts. To comply with ANSI MH29.1, the specification required the lift to be equipped with removable handrails and restraint chains provided at both open ends between the rails.

Blue Giant successfully bid on the project. Overhead Door Company of Tulsa, a subcontractor, purchased the lift. Blue Giant manufactured the lift in accordance with the specification, and it was installed at The Joint on May 11, 2010. The lift was intended to help move material back and forth from the back of the stage to ground level (a distance of 3'10"). The lift had a platform on which material rested, which could then be raised or lowered. The lift also had removable handrail guards

---

[3] We will follow the appellants' practice of referring solely to Mr. Siegel for purposes of discussing the claims and arguments in this case. *See* Aplt. Opening Br. at 7 ("CompSource's claim is derivative of Siegel's. Accordingly, reference herein to Siegel's claim includes that of CompSource." (citation omitted)).

(perpendicular to the back stage line) and a chain on each of the other two sides (parallel to the back stage line). On the stage side, the lift platform was even with the stage so materials could be rolled off the lift platform onto the stage or from the stage onto the lift; on the opposite side overlooking the ground floor, there was a hinged bridge or lip which could be lowered so materials could be rolled from the lift platform onto the ground floor and from the ground floor onto the lift.

Blue Giant provided Overhead Door with both an owner's manual containing instructions and warnings and a laminated placard containing warnings. The owner's manual and placard instruct and warn users to ensure the guard rails and restraint chains across the open ends are securely in place prior to using the lift. The manual further instructs that if the unit is equipped with a hinged bridge, it must be stored in an upright position and secured by a safety chain. The manual warns users never to stand on or apply weight to the hinged bridge unless it is supported by a minimum of four inches of overlap on a solid surface. The manual also instructs users to center loads on the lift.

On May 14, 2014, Mr. Siegel was working at The Joint as a stagehand. According to his testimony, he had used the lift on previous jobs at The Joint, as well as several dozen times on the evening of his accident. At 11:28 p.m., he pulled a heavily loaded wheeled cart from the stage onto the lift platform. At the time, the handrails on either side of the lift platform were up, but there was no chain across the end. The hinged bridge was down, but it was not overlapping a solid surface.

Mr. Siegel testified he does not remember the accident or pulling the cart onto the lift just before the accident. His last memory is loading steel barricades onto the cart. A security video from the theater shows Mr. Siegel pulled the loaded cart onto the lift and past the center of the lift towards the open end and the hinged bridge. He kept walking out onto the unsupported hinged bridge even though the restraint chain was not up and there was no barrier to prevent him from falling. Shortly after walking onto the unsupported hinged bridge, Mr. Siegel fell off the lift. The cart followed, injuring Mr. Siegel when it fell on top of him.

## II. Discussion

### A. *Expert Testimony*

Mr. Siegel proffered Robert J. Block, Ph.D. as an expert witness, and he relied heavily on Dr. Block's opinions in opposing summary judgment. He contends the district court erred in striking Dr. Block's testimony. We review a district court's decision on the admissibility of expert testimony for abuse of discretion. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).

Rule 702 of the Federal Rules of Evidence addresses the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

5

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 imposes "a special obligation" on trial courts to act as gatekeepers to ensure expert testimony is relevant and reliable before admitting it. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702). "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]." *Id.*

Dr. Block has a Ph.D. in Metallurgical Engineering with minors in Physics and Chemistry. He taught at the University of Oklahoma from 1963 until 1990. Since 1990 he has been working as an engineering consultant for his own company, Associated Metallurgists, with approximately three-quarters of his work as an expert witness in various lawsuits. In his expert report, "Dr. Block . . . opined that the lift was defective and unreasonably dangerous because it allegedly did not incorporate in its design and manufacture adequate protection against roll-off of loaded wheeled conveyances, and was not accompanied by adequate and durable warning signs." Aplt. App., Vol. III at 178 (internal quotation marks omitted).

Blue Giant moved to exclude Dr. Block's expert testimony. It argued Dr. Block was not qualified to render his proposed opinion testimony, his opinions were not reliable, and his core opinions were improper legal conclusions. It asked the court to strike Dr. Block as an expert witness and to preclude Mr. Siegel from using his opinions in the case or introducing them at trial.

The district court acknowledged Dr. Block "has significant experience and expertise in the field of engineering," but concluded "he lacks the relevant expertise to opine about the dock lift at issue in this case." *Id*. at 182. The court outlined numerous reasons why Dr. Block's expertise did not align with the issues presented here:

> Dr. Block has never been a working mechanical engineer. He has never designed a machine that was produced and put into production. He has never designed a dock lift. He has (1) never worked in the materials handling industry, is not a member of the Material Handling Industry of America; (2) never attended a meeting of the materials handling industry; (3) does not subscribe to or regularly review any peer reviewed publication regarding materials handling, and (4) has never authored a paper on the subject. In undergraduate school, he studied how scissor lifts work, but aside from his involvement as an expert in litigation or anticipated litigation, he has no experience with the type of equipment at issue in this case. Dr. Block has never read any book on material handling machinery. He admitted he has no knowledge of the standard practices of the material handling industry. He has no expertise in the design, manufacture or use of the lift at issue in this case, and no familiarity with dock lifts aside from what he has learned participating in this case. He has never encountered a dock lift equipped with a hinged bridge before this case.

*Id*. at 181 (citations omitted).

Mr. Siegel first contends the district court's focus on Dr. Block's lack of experience with material handling equipment is misplaced because "material[]

7

handling" is not "the issue in this case." Aplt. Opening Br. at 26. But as Blue Giant explains, the product at issue in this case—an elevating dock lift—is a type of material handling equipment, and it was built to conform to the requirements of an "industry standard, entitled 'Safety Requirements for Industrial Scissor Lifts,' [which] was authored by the Lift Manufacturers Product Section of the Material Handling Industry of America," Aplee. Resp. Br. at 26-27. Dr. Block's experience with material handling equipment is therefore relevant to whether he is qualified to offer expert testimony about the lift.

Mr. Siegel then complains the trial court "barely considered what Dr. Block . . . has done in the field of engineering," focusing instead on what he has not done. Aplt. Opening Br. at 27 (footnote omitted). Mr. Siegel then cites generally to Dr. Block's affidavit and expert report, which he says "gives a much more complete picture of Dr. Block's expertise than the crimped and one-sided view offered by the trial court." *Id*. But in this conclusory argument he fails to identify what specific information about Dr. Block's background or experience the district court should have considered. *Id*.

Mr. Siegel next asserts "[t]he trial court hinged its decision on a finding that [Dr.] Block has never been involved with a lift before," even though Dr. Block's "affidavit shows that he has been involved in at least four other accidents that considered scissor lifts." *Id*. at 28 (citation omitted). This characterization is inaccurate. As set out above, the district court listed a number of reasons why Dr. Block was not qualified to offer expert testimony about the lift in this case; it did

8

not "hinge[]" its decision on any one factor. And, contrary to Mr. Siegel's assertion, the district court recognized Dr. Block had studied scissor lifts during his undergraduate education and was involved with scissor lifts "as an expert in litigation or anticipated litigation," Aplt. App., Vol. III at 181. The district court thus properly considered Dr. Block's admittedly limited experience with scissor lifts when determining whether he had the requisite "knowledge, skill, experience, training, or education to render an opinion," *Nacchio*, 555 F.3d at 1241 (internal quotation marks omitted).

To qualify as an expert, the topic of the proposed expert testimony must "fall within the reasonable confines of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (internal quotation marks omitted). The district court gave specific reasons to support its determination Dr. Block was not qualified to give his proposed testimony because he "lack[ed] the relevant expertise to opine about the dock lift at issue in this case." Aplt. App., Vol. III at 182. Mr. Siegel has failed to show the district court's determination was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Conroy*, 707 F.3d at 1169 (internal quotation marks omitted).[4]

---

[4] Because the admissibility of expert testimony involves a two-part test, *see Nacchio*, 555 F.3d at 1241, the district court could have stopped after it determined Dr. Block was not qualified at the first step of the test, *see, e.g., Conroy*, 707 F.3d at 1168 ("The district court excluded the testimony of [the proffered expert] at the first step of the two-part test, finding her to be unqualified."). But the district court continued to the second step and further determined Dr. Block's opinions were unreliable. *See* Aplt. App., Vol. III at 182-86. Mr. Siegel has also failed to show the district court abused its discretion in its reliability determination.

B. *Summary Judgment*

Mr. Siegel asserts the district court erred in granting summary judgment in favor of Blue Giant. "We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Oklahoma law, to prove a claim for manufacturer's product liability, a plaintiff must establish (1) "the product was the cause of the injury"; (2) "the defect existed in the product . . . at the time [it] left the manufacturer's possession and control"; and (3) "the defect made the [product] unreasonably dangerous . . . ." *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974). Mr. Siegel argues the lift was defective and unreasonably dangerous because it failed to include additional safety devices to prevent roll-off and it failed to have adequate instructions and warnings. He contends a jury could conclude these defects caused his injuries.

Mr. Siegel has failed to point to admissible evidence to show a genuine dispute of material fact on these elements. Most importantly, Mr. Siegel relied almost exclusively on Dr. Block's testimony in his response to summary judgment, *see, e.g.,* Aplt. App., Vol. II at 8-20 ¶¶ 1-3, 5-9, and he likewise relies on Dr. Block's testimony on appeal, *see, e.g.,* Aplt. Opening Br. at 11, 13-16, 18, 23-24. But

10

because the district court properly excluded Dr. Block's testimony, it cannot be used to create a factual dispute.

Furthermore, to the extent Mr. Siegel's defectiveness argument is based on allegedly inadequate instructions and warnings, it also fails for a second reason—he testified he was never given written or oral instructions on how to use the lift, *see* Aplt. App., Vol. III at 171-72. For Mr. Siegel to prevail on this theory, the deficient instructions must have been the cause of the accident. *See Kirkland*, 521 P.2d at 1363. Because Mr. Siegel never saw the instructions or warning placard Blue Giant provided, any defect in the instructions or warnings did not cause his accident.

Even assuming for the sake of argument there was a defect, the evidence supports the conclusion the lift was not unreasonably dangerous. A product is unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Smith v. U.S. Gypsum Co.*, 612 P.2d 251, 253 (Okla. 1980) (internal quotation marks omitted). In other words, "[t]he issue . . . is whether an ordinary person would think the product is less dangerous than it is." *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1280 (10th Cir. 2003). And product manufacturers are not liable when the hazard at issue is open and obvious. *Atkins v. Arlans Dep't Store of Norman, Inc.*, 522 P.2d 1020, 1022 (Okla. 1974).

Mr. Siegel testified he was a "professional stagehand" who "had a very good understanding of how to do" his job. Aplt. App., Vol. 1 at 227. He also testified he

11

knew when he was working at a height up on a lift that he needed "to be careful and safe . . . because if [he] fell there could be an injury." *Id*. at 228. And he further testified there was nothing he knows now about the way the dock lift was set up and any danger it presented that he did not know on the day of the accident. *Id*. at 233. Here, the hazard presented by the raised, open end of the dock lift, unguarded without the restraint chain in place, was open and obvious. Any user—and particularly a skilled stagehand—would understand the risk of falling off the open end of the raised platform.

Finally, Mr. Siegel cannot show there is a triable issue of fact as to causation. The evidence demonstrates Mr. Siegel's injuries were caused by his failure to utilize the industry-standard, factory-installed restraint chain and his actions in pulling the cart past the center of the lift and continuing to walk out onto the unsupported hinged bridge on the open end of the lift. Blue Giant's expert testified if the factory-provided restraint chain had been in place across the open end of the lift, the chain would have prevented Mr. Siegel from falling and the accident would not have occurred. Mr. Siegel has failed to show the district court erred in granting summary judgment in favor of Blue Giant.

C. *Protective Order*

Finally, Mr. Siegel argues the magistrate judge erred in entering the court's standard protective order over his objection. Blue Giant moved for a protective order to cover a small portion of its discovery responses because they contained proprietary information and trade secrets. We review discovery rulings, including the entry of a

12

protective order, for abuse of discretion. *See SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This may include protection of "a trade secret or other confidential research, development, or commercial information." *See* Fed. R. Civ. P. 26(c)(1)(G). "The 'good cause' standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (internal quotation marks omitted). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

In granting the motion, the magistrate judge concluded Blue Giant had shown good cause for its requested protective order, but the magistrate judge cautioned Blue Giant to make all designations in good faith and noted Mr. Siegel retained the ability to challenge any designation. Discovery remained open for another two and a half years. Mr. Siegel never challenged any documents as being improperly designated as confidential under the protective order. Nor did he assert the protective order impeded his ability to respond to Blue Giant's motion for summary judgment. Indeed, Mr. Siegel seems to object to the protective order because it limits his ability to share information with plaintiffs in similar cases, not because it impacted his

13

ability to litigate his case.  We see no abuse of discretion in the magistrate judge's decision to enter the court's standard protective order.

III. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's judgment.

Entered for the Court

Terrence L. O'Brien
Circuit Judge